# RALPH LOCKWOOD

*v.*

# ELISHA L. MILLS *et al.*

1. ATTORNEY AT LAW—*showing authority to commence a suit.* · In an action of ejectment, in answer to a rule upon the attorney who brought the suit to produce his authority for so doing, he exhibited a power of attorney purporting to be signed by four out of the five plaintiffs. It appearing that the four had acted formally, and the other consented, although irregularly, the authority was sufficiently shown.

2. OBJECTIONS TO DEPOSITIONS—*at what time they must be taken.* The objection that no internal revenue stamp was attached to the certificate of the officer before whom a deposition was taken, is merely formal, and cannot be made for the first time in the Supreme Court, nor upon the trial in the court below. If there be any force in such an objection, it should be made on a motion to suppress the deposition, and that should be determined before the commencement of the trial.

3. The rule is different where the objection is substantial; as where the evidence is irrelevant, it may be excluded on the trial.

⁻ 4. WITNESS—*competency.* The objection that a witness whose deposition is sought to be read in evidence, was incompetent, on the ground of interest, should be made either when the deposition was taken, if the other party was present at that time, or on motion before the trial.

5. In an action of ejectment, both parties claimed from a common source of title, the plaintiffs as heirs at law, and the defendant under a sale by the administrator of the plaintiffs' ancestor. *Held,* that the widow of the party through whom the title was thus derived, was a competent witness for the plaintiffs, as her only interest was in her dower right, which could not be affected, whatever the event of the suit.

6. EVIDENCE IN EJECTMENT—*whether an instrument collateral to a deed must be given in evidence.* A deed offered in evidence by a party in an action of ejectment, contained a provision that it was made subject to the covenants contained in certain articles of agreement previously entered into between the parties to the deed. *Held,* not to be necessary to give those articles of agreement in evidence as a part of the deed. Title is not passed or affected by covenants in a conveyance.

7. ACKNOWLEDGMENT OF DEEDS—*in other States.* The acknowledgment of a deed for land in this State was certified as follows: " City and County of New York, ss.—I certify that on this 12th day of October, 1841, before me, Morris Franklin, a notary public in and for the State of New York, duly commissioned, etc., personally appeared Hezekiah Lyon, to me known to be one of the parties described in, and who executed the within conveyance, and

duly executed and acknowledged the same as his act and deed." The certifi-
cate was held to come within the twentieth section of the conveyance act, and
was sufficient.

8. ADMINISTRATOR *purchasing at his own sale—effect thereof, in equity and at
law.* In equity, the simple fact that an assignee, trustee, commissioner, execu-
tor or administrator becomes a purchaser at his own sale, will render the sale
invalid, and it will be set aside by the court.

9. But at law a different rule prevails. In that forum, in order to invali-
date the sale, it must not only appear that the party acting in a fiduciary char-
acter purchased at his own sale, but it must also appear that the sale was
accompanied with fraud.

10. SAME—*what constitutes a fraudulent sale.* Two persons purchased a note
against an estate as a means of getting title to a tract of land belonging to
the estate, upon speculation. One of them, in pursuance of the design, ad-
ministered upon the estate, obtained an order for a sale of the land to pay the
debt, and procured a third party to purchase the sale, for the use of the
owners of the debt, which he did at a price greatly less than its value, and
then quitclaimed to the administrator, who conveyed to his copartner in the
transaction. It was *held,* in an action of ejectment brought by the heirs of the
intestate against the party thus holding the title, that there was such fraud
attending the administrator's sale as to invalidate the title derived therefrom,
in the hands of one having notice of the fraud.

11. NOTICE TO PURCHASER—*what constitutes.* The party claiming under
the administrator's sale, in this case, being a partner in the fraudulent trans-
action, was chargeable with full notice.

APPEAL from the Circuit Court of Marshall county; Hon.
SAMUEL L. RICHMOND, Judge, presiding.

This was an action of ejectment brought by Elisha L. Mills,
Cephas Mills, Cyrus M. Mills, Mary Turner (late Mary Mills),
Allen Turner (her husband), and Hannah Mills, against the
tenants of the appellant, and which he was let in to defend,
to the June Term, 1863, of the Marshall County Circuit Court,
for the N. W. ¼ of sec. 36, T. 30 N. R., 1 W., 35 P. M.

In answer to a rule, obtained at Chambers upon the attorney
for the plaintiffs to produce the authority under which he acted
in bringing the suit, he exhibited to the court a power of
attorney, signed by all the appellees except Allen Turner.
The defendant objected to the sufficiency of the authority, but
the court held it sufficient, and the defendant excepted.

Both parties derived title through Cephas Mills — the plaintiffs, with the exception of Allen Turner, as the children and heirs at law of said Mills, and the defendant under an administrator's sale of the estate of said Mills.

Upon notice by the plaintiffs, a commission issued to take the testimony of Mrs. Frances Bourse, who was the widow of Cephas Mills, and the mother of all the plaintiffs, with the exception of Allen Turner. The defendant filed cross interrogatories.

Upon the trial the defendant proved the fact that the witness was the wife of Cephas Mills at the time of his death, and moved to exclude said deposition on the ground of interest. The court overruled the motion and the defendant excepted.

The plaintiffs below, as evidence of their title, produced a patent from the United States to Hezekiah Lyon, Josiah H. Turner and James H. Harris, dated November 1, 1839, for the lands described in the declaration, and a deed from the patentees to Cephas Mills, dated January 3, 1837.

The deed from the patentees to Mills contained the following provision: "Subject, nevertheless, to the covenants contained in certain articles of agreement, dated 5th October, 1835, made and executed by the parties to these presents, together with others therein named in relation to lands, of which the above described form a part." The certificate of the acknowledgment of the execution of the deed by Hezekiah Lyon was as follows:

" City and County of New York, *ss :*

"I certify that on this twelfth day of October, A. D. 1841, before me, Morris Franklin, a notary public in and for the State of New York, duly commissioned, etc., personally appeared Hezekiah Lyon, to me known to be one of the parties described in, and who executed the within conveyance, and duly executed and acknowledged the same as his act and deed."

Defendant objected to introduction of said deed in evidence, because, first, the articles of agreement referred to in the con-

veyance should be produced as part of the deed; second, it was not sufficiently acknowledged as to Lyon. Objection overruled, and deed admitted, and exception.

It appeared by the deposition of Frances Bourse, that the plaintiffs, Mills and Mary Turner, were the only heirs at law of Cephas Mills deceased, who died in February, 1842. To this deposition no revenue stamp was affixed, but the objection was not made at the trial.

The defendant, as evidence of his title, produced and read in evidence an order of the probate court of Marshall county, appointing Wm. B. Green as the administrator of the estate of Cephas Mills, deceased; the bond, oath, and letters of administration in pursuance of the appointment; a decree of the said County Court for the sale of lands to pay debts, obtained by Green as administrator; the report to the County Court of the sale, by administrator, of all the lands mentioned . in the decree; a deed from the administrator in pursuance of such sale, to Charles Parker, dated February 3, 1857; a deed of conveyance from Charles Parker to Wm. B. Green, the administrator, dated March 10, 1857, and a deed of conveyance from Wm. B. Green, to the defendant below, dated February 2, 1858.

It appeared from the testimony of Green, the administrator, and Parker, the purchaser at the sale, that Green appeared in the County Court as a creditor, basing his claim upon a note executed by Cephas Mills to his brother, which had been procured and brought to him by Lockwood, the defendant, under an arrangement that they were to get the title, dispose of the land and divide the profits. The sale and all the proceedings were had in pursuance of this arrangement. Parker bought the land at the sale at the request of Green, paid no consideration for it and afterward quitclaimed to Green. The land sold by Green as administrator was 960 acres, which it appears was worth from six to ten dollars per acre, but was sold for the sum of $1,135. The deed to Lockwood included 480 acres of this land, and the consideration of this deed was but $600.

The cause was tried by the court, who found for the plaintiffs, and, judgment being entered in their favor, the defendant appealed to this court.

Messrs. BANGS and SHAW, for the appellant.

Messrs. McCOY and FLEMING, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In answer to the rule upon the attorney to produce the authority under which he acted in bringing the suit, he exhibited to the court a power of attorney. It purported to be signed by all of the appellees but Allen Turner, and authorized the commencement of the action. There seems to be five owners of the land, all of whom joined in the execution of the power, but Mary Turner was not joined by her husband. When, however, we find four out of five of the owners formally acting, and the other consenting, although irregularly, we think the authority was sufficiently shown.

It is insisted that the court erred in overruling the motion to suppress the deposition of Frances Bourse. The objection taken is, that the officer's certificate is not accompanied with a United States revenue stamp. Even if there was any force in this objection, it is not well taken, because the record fails to show that any such motion was entered, or objection made, in the court below. Such an objection will not avail, made for the first time in this court. Nor could it be taken on the trial in the court below. If there was any force in the objection, it should have been presented on a motion to suppress the deposition, which should have been determined before the commencement of the trial. If an objection, it is only formal, and our statute expressly declares that such objections shall be determined before the trial. It is otherwise with substantial objections. If the evidence is irrelevant, it may be excluded on the trial; but if only to the form, the party should have

an opportunity of removing the objection, by procuring the witness or obtaining the evidence, if it may be legally done.

Nor is any error perceived in refusing to exclude the evidence upon the ground that the witness was interested. First, because this objection should have been raised, either when the deposition was taken, if the 'other party was present when it was taken, or on motion before the trial. If there was a disqualifying interest, the party in whose favor it was taken should have had the opportunity of removing the interest if it could be done. But, in the second place, in this case there was no disqualifying interest. She was the mother of the plaintiffs below, and the widow of Cephas Mills, of whom they claimed to inherit the property. She was entitled to dower in the premises in any event. That right was not dependent upon the recovery of the property by the heirs. There can be no pretense that the sale by the administrator, even if sufficient to pass the title, affected her right to dower in the lands. The success of either party could not in the slightest degree affect her interest.

It can make no difference what covenants the deed to Cephas Mills may have contained. Title is not passed or affected by covenants in a conveyance. All writers on this branch of the law, from the time of COKE to the present time, inform us that such covenants are inserted for a different object and served a different purpose. It is the granting part of the deed which purports to and does pass the title. The covenants are only inserted to indemnify the grantee in case they should be broken. They are collateral to the title, and may or may not run with it.

No objection is perceived to the certificate of acknowledgment of Lyon to the deed by him to Harris and James. The officer in his certificate states, "personally appeared Hezekiah Lyon, to me personally known · to be one of the parties described in and who executed the within conveyance, and duly executed and acknowledged the same as his act and deed." This comes within the provisions of the twentieth section of the conveyance act. Scates' Comp. 963. This acknowledgment is sufficient.

It however remains to determine whether defendant below showed title in himself by the administrator's sale. Green, the administrator, who made the sale, was owner in part of the debt for the payment of which the land was sold. He and Lockwood obtained the claim and agreed to procure a sale of the land for its payment, and to divide the profits. Parker became the nominal purchaser at the sale, at Green's request and for his use, and quitclaimed to him without consideration. Green afterward conveyed to appellant. Thus it will be observed that whatever right he has is subject to any defect that may have existed to the title in the hands of Green, as they were partners in the whole transaction, and appellant cannot claim any benefit that could inure to an innocent purchaser, as he had full notice. The evidence shows that Green was creditor, administrator, auctioneer and purchaser at the sale, thus having it in his power to strike down the property at his own price; and we see as the result of representing all of these relations to the estate, that 960 acres of land were sold for the sum of $1,134. The evidence shows the lands embraced in the deed to Lockwood, were worth from six to ten dollars per acre. If they were worth eight dollars per acre, that would give $3,840, while they sold for but $600, and if the whole 960 acres were worth the same per acre, their value would be $7,680, and they only brought $1,135. A large compensation for acting as creditor, administrator, crier and purchaser at his own sale.

The rule is well established, in equity, that the simple fact, the purchase by assignees, trustees, commissioners, executors or administrators, at their own sales, renders the sale invalid and it will be set aside by the court. This, too, whether loss has resulted or not, to the owner. *Thorpe* v. *Cullum*, 1 Gilm. 614. But at law, a different rule prevails, as in that forum it must not only appear that the person occupying a fiduciary relation and in whom the law has reposed a trust, has become the purchaser, but that the sale was accompanied with fraud (*Jackson* v. *Cadwalader*, 14 Johns. 407) to render the sale invalid.

Then was there fraud in this transaction? From Green's testimony it appears that the whole matter was designed as a speculation. The note was purchased as a means of obtaining title to this land at greatly less than its value, and Green was to become the administrator to carry out the design. The evidence shows how well the design was executed, when probably near $7,000 was made as a profit on $1,100 and a trifle over. It can hardly be realized that the forms of the law could be more terribly abused for the perpetration of injustice, wrong and fraud than in this case. Instead of its being just and proper it is iniquitous and monstrous. How any upright man could hold that this transaction was not fraudulent, we are unable to conjecture. We are astonished that such a claim of title could ever be relied upon in a court of justice. Our legal tribunals can never be used to sustain such proceedings, and permit parties who have attempted to prostitute the forms of law and the process of courts, as the engines of such fraud and iniquity. Appellant was a party to the transaction and must be held responsible for its consequences. The judgment of the court below must be affirmed.

*Judgment affirmed.*