# Henry C. Sailors
## v.
## The Nixon-Jones Printing Co.

1. PARTNERSHIP.—Where the question of partnership is to be determined from a contract between the parties to it, the relation must be found from the terms and provisions of the contract, and even though parties intend to become partners, yet if they so frame the terms and provisions of their contract as to leave them without any community of interest in the business or profits, they are not partners, either in fact or in law. *Held*, that under the contract in this case appellant was bound to become a partner at the end of two years, but until that time, was a joint owner merely, and not a partner.

2. INCOMPETENT TESTIMONY IN DEPOSITION.—The statement of one of the partners in his deposition, that appellant was one of the firm, without proof that appellant authorized the statement, was incompetent.

3. SAME—PRACTICE.—When incompetent testimony gets into a case, in the shape of depositions or otherwise, it is the duty of the court, when required, at any stage of the trial, to exclude it or direct the jury to disregard it.

APPEAL from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding. Opinion filed January 26, 1887.

An action was brought by appellee against appellant, impleaded with Jules T. Guibout and Tryon J. Woodward. The issue tried was upon a plea by appellant denying joint liability. It appeared that in the spring of 1884, appellant being the owner of a system of commercial reporting and rating, in part consisting of certain books or forms which had been copyrighted by him, sold a one-third interest to one Black, and another third to Woodward. The business, which was called the Merchants' Mutual Protection and Collection Association, was located at St. Louis, and appellant living in Chicago, Black and Woodward were to conduct the business. In June or July, 1884, appellant sold his third interest to one Nixon, and after the business had been conducted awhile by Woodward, Nixon and Black, Black left the concern, and having failed to

pay appellant in full for the third purchased by him, that third interest reverted under the contract of purchase to appellant. After a time Nixon sold his interest to one Guibout, and about Jan. 1, 1885, Woodward being the owner of one third of the copyright books and the business in St. Louis, Guibout the owner of another one third and appellant of the other third, the following contract in writing was made between them:

"This article of agreement, made and entered into, in duplicate, this 2d day of January, 1885, by and between Henry C. Sailors, of Chicago, Illinois, and Jules T. Guibout and Tryon J. Woodward of St. Louis, Missouri, in consideration of the mutual covenants herein named, witnesseth: that whereas, by mutual terms this day agreed upon by the parties hereto, said Jules T. Guibout has become possessed of an undivided one-third interest in and to the business heretofore carried on at St. Louis, under the firm name of Woodward & Co., managers of the Merchants' Mutual Protection and Collection Association of that city, now it is expressly and further agreed by the parties hereto:

Item one. That said business shall be conducted and carried on as before by the parties hereto, except that while the said Henry C. Sailors is hereby released from all active management or responsibility of said business for two years from and after this date, said other partners are hereby declared and agreed to be the sole responsible managers for two years from this date; and they agree to use all diligence and skill required by said business, and to advance its interests and promote the same by their reasonable endeavor, and to share all profits and losses between them, the said two persons, during said two years. Said Henry C. Sailors shall have no pecuniary interest or liability therein, during said time, but shall have the right, from time to time, to a reasonable inspection of the current books and business of said firm, and to advance its interests in any reasonable manner, from time to time, and to ask and receive at proper times, from his said copartners, or either of them, such information as they may from time to time possess.

At the expiration of said two years, said partnership shall continue, but the profits and losses thereafter shall be shared in proportion to the several interests of the parties hereto, and said Henry C. Sailors, by himself or representative, to be by him named and accepted by all parties, shall actively co-operate in the conduct, management and promotion of the business thereof.

Witness our hands and seals at Chicago, Illinois, the day and year first above written.

|  |  |
|---|---|
| H. C. Sailors, | [seal.] |
| Jules T. Guibout, | [seal.] |
| Tryon J. Woodward. | [seal.] |

*Addendum:*

By mutual agreement by and between the undersigned, and in consideration thereof, the partnership name of the within business and copartnership is this day changed to that of the 'Union Mercantile Agency.'

Witness our hands and seals this the 6th day of April, 1885.

Witness:

|  |  |
|---|---|
| Henry C. Sailors, | [seal.] |
| J. T. Guibout, | [seal.] |
| T. J. Woodward. | [seal.]" |

In May, 1885, the indebtedness for which the action was brought was incurred on the order of Guibout and was for printing certain books containing ratings which were to be distributed to customers with a view of increasing the profits of the business. No participation by appellant in the conduct or management of the business was shown, but in their depositions offered in behalf of appellee, both Woodward and Guibout say that appellant was a partner.

May 26, 1885, an agreement of sale of their interest was made by Guibout and Woodward, in the business, to one Clark, to which transfer appellant consented. The agreement of sale was as follows: "St. Louis, May 26, 1885. J. T. Guibout and T. J. Woodward: I propose to purchase your two-thirds interest in the business known as the Union Mercantile Agency (formerly the Merchants' Mutual Protection and Collection Association of the City of St. Louis, Mo.), including all books,

blanks, office furniture, contracts, good will of the business, office lease, insurance policies, and in fact, your entire interests and control in said business; for which I agree to pay you two thousand dollars. The bill of sale to be executed and immediate possession of office and all property named above given me upon payment of said money, which shall be on or before June 10, 1885. The amount shall be in full and any liabilities, if any there be, shall be fully paid and satisfied by you. Money to be paid, $1,000 to each. That is, $1,000 to said Guibout, and $1,000 to said Woodward.

W. J. CLARK.

In consideration of one dollar to me in hand paid, we hereby accept the above proposition.

JULES T. GUIBOUT.<br>TRYON J. WOODWARD.

Witness: I hereby consent to said transfer of interests.
H. C. SAILORS."

The agreed sale was not consummated, and on June 26, 1885, a voluntary assignment was made at St. Louis by Woodward and Guibout. In Guibout's deposition which was read at the trial by appellees, was the following questions and answers:

"Q. Did you inform the officers of this company (meaning plaintiffs) at the time this contract was made, as to who constituted your association?

A. Yes, sir.

Q. What was the information you gave them?

A. Well, I informed Mr. Nixon, of Nixon-Jones Printing Co., that the firm consisted of Mr. Woodward, Mr. Henry C. Sailors and myself."

After the appellee rested, appellant moved to strike out and take from the consideration of the jury the foregoing portion of the testimony of Guibout, but the court overruled the motion, and the appellee excepted.

Guibout further testified that the books were printed with appellant's knowledge "and also with his understanding that he was going to help us pay for them. While those books were

being printed I went to Chicago and had a conversation with Mr. Sailors at his place of business, and I told him of our straitened circumstances, and he told me that that book would surely give us a boom and enable us to collect all that was due from subscribers and take many more, and he told me besides that he would certainly be able to help us in a little while."

Appellant in his testimony denied that he ever agreed to pay anything toward the books, or that he knew anything of them until they were printed.

There was a verdict against appellant, and judgment, and the case is brought to this court by appeal.

Mr. JOSEPH D. HUBBARD, for appellant.

Messrs. FLOWER, REMY & GREGORY, for appellee.

MORAN, J.   The contract of January 2, 1885, between Woodward and Guibout and appellant, did not constitute appellant a partner in the business which Woodward and Guibout were to conduct in St. Louis.   True, the word "partnership" is used to designate the relation of the parties, but the whole agreement shows plainly that Sailors was a joint owner merely, and that the business was to be conducted wholly by the others, and they were to have the entire profits accruing, and bear all losses that might happen in running the business, till, at the end of two years, Sailors was to come into a participation of the business and thereafter share the profits and losses of the business that should be done.   It was a contract which bound appellant to become a partner at the end of two years, but such contract would not make him liable for debts contracted before his relation as partner commenced.   The agreement is very explicit that he shall not share the profits nor be liable for the losses.   He retained only his one third ownership in the books and good will of the business, and had no control over its management and no right beyond seeing to the preservation of the property.   The fact that the parties to such relation themselves call it a partnership will not make it so.   Where the question of partnership is to be determined

from a contract between the parties to it, the relation must be found from the terms and provisions of the contract, and even though parties intend to become partners, yet if they so frame the terms and provisions of their contract as to leave them without any community of interest in the business or profits, they are not partners either in fact or in law. Parsons on Partnership, 91. A partnership *inter se* must result from the intention of the parties as expressed in the contract, and they can not be made to assume toward each other a relation which they have expressly contracted not to assume. The terms of the agreement, where there is one, fixes the real status of the parties toward each other.

If there is no agreement, then if they deal with each other as partners, sharing losses and profits, their interest will be gathered from their acts, and they will be partners *inter se.* Collyer on Partnership, Sec. 2 and note. A mere community of interest in property will not make the owners partners. There must be an agreement for a joint venture and to share profits and losses; and in the absence of such a mutual agreement they are mere tenants in common of the property and the act of one will not bind the other. Chase v. Barrett, 4 Paige, 148; Niehoff et al. v. Dudley, 40 Ill. 406; Smith v. Knight, 71 Ill. 149.

As the contract did not make appellant a partner, he could only be held on the ground that he had held himself out as one or authorized or assented to his being so held out. Nixon says that he knew appellant was a partner when the books were ordered, but he does not state how he knew it, and it may well be inferred that he only knew from what Guibout told him at the time the books were ordered. The question whether the appellant had been, with his consent, held out as a partner to the plaintiff, was one of fact for the jury ; and it was important that in determining that question the jury should be confined to whatever competent testimony was before them. The statement in Guibout's deposition that he told Nixon that appellant was one of the firm without proof that appellant authorized the statement, was incompetent, and in view of all the evidence in the case was calculated to mislead

the jury. A party has a right to insist that irrelevant and incompetent testimony shall be excluded. Incompetent testimony in a deposition, though not objected to when the deposition is taken, may be objected to on the trial. The objection is not as to mere form, it is substantial. Cooke v. Orne, 37 Ill. 186; Lockwood v. Mills, 39 Ill. 602.

Nor did appellant lose his right to have the evidence excluded by failing to object to it when read from the deposition. When incompetent testimony gets into the case in the shape of depositions or otherwise, it is the duty of the court, when required, at any stage of the trial, to exclude it or direct the jury to disregard it. Pittman v. Gaty, 5 Gilm. 186; Greenup v. Stoker, 2 Gilm. 688; Wickenkamp v. Wickenkamp, 77 Ill. 92.

The refusal of the court to exclude the evidence on appellant's motion was material error, and, while we are much inclined to the opinion that there was no legal evidence before the jury to support a verdict that appellant was jointly liable, still we prefer to rest the reversal on the error above specified, and remand the case for such further action as the parties may desire to take.

Reversed and remanded.