## A BUSINESS ENTERPRISE WHICH WAS NOT A PARTNERSHIP.

Circuit Court of Cuyahoga County.

FRANK E. TAPLIN v. CHRISTOPHER F. EMERY.

Decided, June 14, 1909.

*Partnership—Determination as to Whether One Contributing to the Enterprise Became a Partner—Mutual Agency the Final Test.*

The fact that E entered into an agreement with two others to carry on a certain line of business and that he advanced a substantial amount for that purpose and the three chose to denominate themselves as partners, does not create a partnership, where the usual incidents and criteria of a partnership are expressly excluded by the terms of the agreement and with them the element of mutual agency.

*C. F. Taplin,* for plaintiff in error.
*Cook, McGowan & Foote,* contra.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

Error to the court of common pleas.

The sole question in this proceeding in error is as to the construction of a partnership agreement attached to and made a part of the amended petition below, by which it is claimed that the defendant in error became and was a partner in the partnership firm of Denison, Prior & Company, and is liable, as such, for said partnership's debts. Said agreement is as follows:

"Made at Cleveland this first day of May, 1899, by and between Charles E. Denison, party of the first part; Leland W. Prior, party of the second part, and C. F. Emery, party of the third part;

"WITNESSETH, WHEREAS, the above named parties desire to engage as partners in the business of buying and selling bonds, stocks and investment securities, also to do a brokerage business in stocks, under the firm name of Denison, Prior & Co.

"Said parties are to respectively contribute in cash for the capital of said partnership the following sums, to-wit: Party

of the first part, $50,000; party of the second part, $50,000; party of the third part, $25,000.

"Said parties of the first and second parts hereby bind themselves each to give their entire time, skill and ability to the promotion of said business, and are to have full and entire charge of the business of said firm.

"It is mutually agreed that the parties of the first and second parts shall be credited monthly from said business, as salary, the sum of three hundred ($300) dollars, during the life of this partnership, also interest at the rate of 6 per cent. per annum on the amount of their capital; said interest to be credited semi-annually.

"It is also mutually agreed that the party of the third part shall be paid by the firm as full compensation for the use of his capital interest on same at the rate of 8 per cent. per annum, payable semi-annually, without regard to the firm's profits or losses, and the parties of the first and second parts firmly agree to protect the party of the third part to the full extent of their power and resources, against any loss of his capital.

"Any profits earned over and above the salaries and interest charges mentioned above, shall be divided equally between the party of the first part and the party of the second part, and each shall be entitled to withdraw his share at the end of each year, or to leave same to his credit, on which 6 per cent. interest shall be paid by the firm.

"It is also agreed that any losses by the firm shall be shared equally by the party of the first part and the party of the second part.

"The obligations of this agreement shall be binding upon the parties hereto for a period of three years from May 1st, 1899, and as much longer as mutually agreeable to the parties hereto, it being understood that the partnership shall terminate any time after three years, upon the giving of three months' notice in writing of such desire by any one of the three parties interested.

"If for any reason this partnership should be terminated, it is mutually agreed that after paying each party the amount of his capital, and interest due thereon, the remainder of the property and assets shall be divided equally between the party of the first part and the party of the second part.

"It is hereby further agreed that the party of the first part and the party of the second part shall not, during the term of this agreement, endorse any paper except for the purpose of the partnership nor become surety in any manner or in any sum whatsoever.

"It shall be the policy not to enter into any large or important contracts without the consent of both parties of the first and second parts, and it is also mutually agreed that the firm will not

speculate in stocks or buy or sell listed stocks for its own account.

"In WITNESS WHEREOF, we have hereunto set our hands and seals the day aforesaid.

"CHARLES E. DENISON,
"L. W. PRIOR,
"C. F. EMERY."

Plaintiff in error calls especial attention to the following features of this agreement:

First.    That Emery by his own agreement is called a partner in this firm.

Second.    That the words "and company" in the firm name imply that Denison and Prior were not the sole partners in the firm.

Third.  That the sum advanced or contributed by Emery is denominated and treated as "capital."

Fourth.    That Emery is accorded by the agreement the power of dissolution of the partnership.

Fifth.    That although, as among the partners, Emery is given priority over the other two in the liquidation of the firm assets, yet a proper interpretation of their agreement gives him no such priority as against the firm's creditors, so that he has in fact risked his money as capital in the firm business in a sense different from any one merely lending money to the firm.

Sixth.    The agreement by its own terms gives him a certain control over the business by reason of its limitation of salaries to be paid to Denison and Prior, a covenant inconsistent with the exclusive and sole control of the partnership business by Denison and Prior alone.

Seventh.    By the agreement Emery is given some share in the profits, in the sense at least that he was interested in there being profits, so that he might not have to resort to the guaranty by the other two parties to the agreement.

On the other hand, it is evident that nearly all the incidents and criteria of a partnership are expressly excluded by the terms of the agreement itself.    The mere fact that Emery himself as well as the other parties to this agreement have seen fit to denominate themselves partners does not make them such, either as to one another or as to the world.    *Oliver* v. *Gray*, 4 Ark., 425; *Saylers* v. *Nixon-Jones Iron Co.*, 20 Ill. App., 509.

Indeed, it is substantially conceded that such is the law, and if it were not, authorities to that effect might be multiplied.

What, then, in the last analysis is the crucial test of the fact of partnership, where the question is, as in this case, uncomplicated by any holding out as such?

The first paragraph of the syllabus of *Harvey* v. *Childs et al,* 28 Ohio State, 318, is as follows:

"The liability of one partner for the contracts of another, when not estopped from denying the liability, is founded on the relation they sustain of being each principal and agent in the joint business. That relation is, therefore, the true test of a partnership, and the liability rests on the ground that it was incurred on the express or implied authority of the party sought to be charged."

In the opinion by Day, J., at page 321, the court says:

"Although a partnership may be said to rest upon the idea of a communion of profits, nevertheless the foundation of the liability of one partner for the acts of another, is the relation they sustain to each other, as being each principal and agent. That relation, it would seem, then, constitutes the true test of a partnership liability, and rests upon the just foundation that the joint liability was incurred on the express or implied authority of the party sought to be charged.

"But if the relation of principal and agent be regarded as the test of a partnership and consequent joint liability, the question still remains, what shall be deemed sufficient evidence of that relation, or to raise the implication of authority to incur the liability in question?

"To this end numerous tests have been supposed to exist; but the best considered and least objectionable is that of a community of interest in the profits of a business or transaction as a principal or proprietor. Parsons, Partnership, 71 and note; Collyer, Partnership, Secs. 25, 44. See also Story, Partnership, Sec. 36, 38, 60; *Berthold* v. *Goldman,* 65 U. S., 124; How., 536.

"But this test is valuable as a rule chiefly because it evinces a relation between the parties, where each may reasonably be presumed to act for himself and as agent for the others, and to that extent establishes the fact that the liability was incurred on the authority of all so participating in the profits. Participation in the profits of a business, however, can not be regarded as a rule so universal and unrelenting as to be unjustly applied to a case where a debt is incurred by one who can not be said to be acting, in the particular transaction, as the agent or on behalf of the

party sought to be changed. Therefore, on principle, the true test of a partnership, at least, is left to be that of the relation of the parties as principal and agent, to be proved by any competent evidence; for when they sustained that relation, a joint liability may be said to have been incurred by the authority, or on behalf of each of the parties so related. The tendency of the more modern authorities, both English and American, is to this conclusion.''

So far at least as this state is concerned, this analysis of the subject would seem to be conclusive; and the element of mutual agency seems to be expressly excluded, so far as Emery is concerned, by the terms of this agreement.

Cases may be, of course, and they are cited in abundance, in support of the proposition that a partnership may exist with any of the usual elements wanting. There are also cases where nearly all the usual elements of a partnership are wanting, and yet a partnership has been held to exist, but we find no case where all the important elements, including that of mutual agency and mutual sharing in the profits and losses are wanting, and yet the existence of a partnership is affirmed. By assuming in this case that the agreement in question *prima facie* constitutes the partnership which it purports in name to create, it is easy to show *seriatim* that the absence of the ordinary *indicia* of partnership need not be fatal to its existence as such, but if we start with the contrary assumption, it is impossible to construct a partnership out of the meager elements in this agreement on which the plaintiff relies. And the same is true if we start without any presumption whatever and merely balance the arguments pro and con.

Reliance is put upon *Hunter* v. *Newman*, 1st Nisi Prius, 307, which is affirmed in 52 Ohio State, 659, 660, and an examination of that case discloses that although the facts are not unlike those in the case before us, there is this essential difference, namely: that the contract is in terms an agreement for ''a limited partnership,'' under Revised Statutes 3141, *et seq.*, and it is not controlling in respect of the question now under consideration.

It would unduly prolong this opinion to undertake an analysis of the great multitude of cases which bear in one way or another

upon the construction of this agreement. Suffice it to say, that we do not find in its provisions any sufficient evidence that it constituted Emery a partner in the firm of Denison, Prior & Company.

But it is urged further that though it may not be sufficient to that end, it may nevertheless suffice as a basis for the introduction in evidence of the partnership books, showing that Emery's contribution to the assets of the firm was charged to capital account, and that Emery was otherwise treated in the bookkeeping as a partner, consistently with the terms of the agreement; also that the agreement affords sufficient basis for the introduction of the published notice of dissolution, which though never brought to the plaintiff's attention, might be deemed to afford some evidence of Emery's status as a partner. We fail to find any merit in this contention. None of these items of evidence proposed to be introduced would operate with the agreement to enlarge its terms and limitations.

We hold that there is no error in the record before us, and the judgment is affirmed.