## John Jenkinson v. Monroe Brothers & Co. (A Corporation).

*Contract for manufacture and sale of lumber—At an agreed price per thousand feet—If inspector is agreed on, delivery of the lumber on the dock ready for shipment passes title to vendee—Written contract—Containing uncertain clause capable of being made certain by parol evidence—If its terms do not prohibit meaning claimed by respective parties—Subsequent conversations between them admissible to explain its intended bearing on contract—If such clause was added to the contract, after its execution by defendant, by plaintiff—Whose authority is denied by defendant—Evidence of subsequent conversations between the parties regarding such disputed clause—Held admissible, as tending to show settlement and interpretation of the question—And ratification by defendant of plaintiff's act—Suit for price of lumber sold and delivered by plaintiff to defendant—In which the lumber is attached as the property of defendant—And plaintiff indemnifies the officer and sells the lumber—Amount realized will be treated as a partial payment on plaintiff's claim.*

1. Plaintiff agreed to manufacture and *deliver on the dock,* from logs owned by him, a quantity of pine lumber, at an agreed price per thousand feet, payable as follows:   Cost of freighting logs to mill on the first of each month, as logs were delivered; saw bill as lumber was sawed and delivered on the dock at Tawas, Michigan; and the balance at ninety days from date of shipment of said lumber, which was to be manufactured according to defendant's directions, and cut in dimensions to suit its trade at Cleveland, Ohio. An inspector was agreed upon to measure the lumber.

   *Held,* that the piling on the dock was intended by both parties as a delivery of the lumber to the defendant, who could thereafter ship it without reference to plaintiff. *Sandler v. Bresnaham,* 54 Mich. 342.

2. Where a written contract contains an *uncertain* clause capable of being made *certain* by *parol* evidence, and its terms do not prohibit the

meaning claimed by the respective parties, evidence of subsequent conversations between them is admissible to explain *its* intended bearing upon the contract.

3. Where, after the execution of a written contract by one party, the other interlined an additional agreement to be performed by the party so signing, and in a suit involving the rights of the parties under the contract evidence is offered of subsequent conversations and agreements between them regarding said disputed clause,—

*Held,* that such evidence was admissible, as tending to show a final settlement and interpretation by the parties of an open and disputed question, not settled in the contract as originally executed by the defendant, the question of the authority to make the change, and of its subsequent ratification by the defendant, being in issue.

4. A plaintiff brought suit for the price agreed to be paid by the defendant for lumber to be manufactured and delivered at an agreed price per thousand feet, and attached a quantity of such lumber, the title to which he claimed had passed to defendant by such delivery. After such seizure plaintiff indemnified the sheriff, and sold the lumber at less than the contract price.

*Held,* that the amount realized on such sale must be treated as a partial payment in reduction of plaintiff's claim.

Error to Iosco.  (Tuttle, J.)  Argued April 14, 1886. Decided June 10, 1886.

Assumpsit.  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Shepard & Lyon,* for appellant:

Cited upon the question whether the title to the lumber passed by delivery on the dock: *Lingham v. Eggleston,* 27 Mich. 324; *Hatch v. Fowler,* 28 Id. 205; *Hahn v. Fredericks,* 30 Id. 223; *Wilkinson v. Holiday,* 33 Id. 386; *Scotten v. Sutter,* 37 Id. 526.

The existence of a dispute as to the *time* of payment for and shipment of the lumber, and defendant's refusal to make the payments demanded by plaintiff, and agreement to give its note if change asked for was made, coupled with the execution of the note immediately thereafter, was a sufficient consideration to support the parol contract made at Cleveland: *Perkins v. Hoyt,* 35 Mich. 506; and the original consideration between the parties was sufficient to sustain the new agreement: *Blanchard v. Trim,* 38 N. Y. 225; *Fish v. Cottenet,* 44 Id. 538.

A dispute having arisen, it was competent to settle the

matters in controversy by a parol agreement or modification of the contract: *Seaman v. O'Hara*, 29 Mich. 66; *Perkins v. Hoyt*, 35 Id. 506; *McKay v. Evans*, 48 Id. 597; *Barton v. Gray*, 57 Id. 622.

If the title to the lumber passed to defendant on delivery, and plaintiff disposed of it without defendant's consent, he can have the amount applied in reduction of plaintiff's damages in this suit: Sedgwick on Damages (6th ed.) 549.

The doctrine of recoupment is not confined to actions on contracts, but often applied to cases of tort: Id.; and the principle of recoupment may be applied, in a proper case, after verdict for plaintiff: *Plevin v. Henshall*, 10 Bing. 24. See, also, *Ward v. Fellers*, 3 Mich. 281; *Platt v. Brand*, 26 Id. 173; *Chandler v. Childs*, 42 Id. 128; *Carey v. Guillow*, 105 Mass. 18.

*O'Brien J. Atkinson*, for plaintiff:

When the lumber was piled on the dock plaintiff's part of the contract was fully performed, and the delivery to defendant was perfect. This is not a new question in this State, but has been frequently before the Court, and since the decision in *Byles v. Colier*, 54 Mich. 1, must be considered settled. See, also, *Lingham v. Eggleston*, 27 Id. 329; *Sandler v. Bresnaham*, 54 Id. 342; *Kohl v. Lindley*, 39 Ill. 195; *Morrow v. Campbell*, 30 Wis. 90; *Rattary v. Cook*, 50 Ala. 352; *Hurd v. Cook*, 75 N. Y. 454; *Bell v. Farrar*, 41 Ill. 400; *Graff v. Fitch*, 58 Id. 373; *Gilman v. Hill*, 36 N. H. 311; *Hatch v. Oil Co.*, 100 U. S. 124; *Nichols v. Morse*, 100 Mass. 523.

Where something is to be done by the vendor for the vendee's benefit, as, for instance, loading the goods on a vessel for transportation, the title may pass by the contract of sale notwithstanding: *Whitcomb v. Whitney*, 24 Mich. 486; *Lingham v. Eggleston*, 27 Id. 329; *Terry v. Wheeler*, 25 N. Y. 520.

The fact that an inspection has to be made to determine with accuracy the *sum* to be finally paid is not inconsistent with an *intent* that the title should pass immediately, when partial payments have been made on estimates: *Colwell v. Keystone Iron Co.*, 36 Mich. 51; *Byles v. Colier*, 54 Id. 1; *Macomber v. Parker*, 13 Pick. 175; *Williams v. Adams*, 3 Sneed (Tenn.) 359; *Sewell v. Eaton*, 6 Wis. 490; *Morrow v. Reed*, 30 Id. 81; *Ockington v. Richey*, 41 N. H. 275; *Fitch v. Burk*, 38 Vt. 683; *Hatch v. Oil Co.*, 100 U. S. 124; *Oil Co. v. Van Etten*, 107 Id. 325.

The title may pass without delivery if the property is sufficiently identified: *Kimberly v. Patchin*, 19 N. Y. 338; *Russell v. Carrington*, 42 Id. 119; *Watts v. Hendry*, 13 Fla. 523; and this is true even though something remains to be done to fit the property for delivery: *Elgee Cotton Cases*, 22 Wall. 180; *Butterworth v. McKinly*, 11 Humph. (Tenn.) 206; *Cummins v. Griggs*, 2 Duv. (Ky.) 87; *Burr v. Williams*, 23 Ark. 244; *Marble v. Moore*, 102 Mass. 443; *Riddle v. Varnum*, 20 Pick. 284; *Shelton v. Franklin*, 68 Ill. 333; *Sedgwick v. Cottingham*, 54 Iowa, 512; *Straus v. Minzesheimer*, 78 Ill. 492; *Byles v. Colier*, 54 Mich. 1.

The indemnification of the sheriff by plaintiff, and his sale of the lumber to prevent its depreciation in value, cannot be complained of by defendant. This was all done after the action was commenced, and the circumstances existing when the writ was issued will govern the case to its conclusion: *Thompson v. Ellsworth*, 39 Mich. 719; *Vanneter v. Crossman*, Id. 610; *Blanchard v. Brown*, 42 Id. 46.

The claim of defendant to set-off the amount realized for the lumber cannot be permitted, any more than a recovery in a suit on a claim which did not mature until after the commencement of suit.

MORSE, J. The plaintiff in this suit is a resident of Port Huron, St. Clair county, and the defendant a corporation organized under the laws of this State. The parties made the following agreement at the date thereof:

"Articles of agreement, made this eighth day of August, A. D. 1883, by and between John Jenkinson, of Port Huron, Michigan, party of the first part, and Monroe Bros. & Co., of Cleveland, Ohio, parties of the second part, *Witnesseth*, that said party of the first part agrees to sell, and does hereby sell, and said parties of the second part agrees to buy, and does hereby buy, all the lumber to be cut from a lot of logs marked diamond 'J,' estimated to be two to three million feet, more or less, all to be of white pine, and of merchantable grades. The price of said lumber shall be fourteen dollars per M feet, straight measure. Mill culls to be marked 'T;' price at the time they are delivered on dock. Terms of payment are to be as follows: Said second parties are to pay the costs of freighting said logs to mill, on the railroad, the first of each month, as the logs shall be delivered to the mill; also the saw bill, as the lumber is sawed and delivered on the dock at

Tawas, Michigan; and the remaining balance of said pur-chase price at ninety days from date of shipment of said lum-ber; and said lumber shall be shipped within thirty days after the same is sawed and piled.   The manner of the manufac-ture shall be as said Monroe Bros. & Co. shall direct, and shall be cut in such dimensions as shall suit their trade, to be determined by said parties of the second part.

"In witness whereof said parties have hereunto set their hands this —°—— day of August, 1883.

> "JOHN JENKINSON,
> "By W. W. R.
> "MONROE BROS. & CO.,
> "By WM. R. MONROE, Prest.

"It is optional with the party of first part whether parties of the second take the mill culls or not."

Under this agreement the plaintiff caused a large quantity of the logs to be taken to the mill and sawed, and the lum-ber piled on the dock in the months of September, October, and November, 1883.

At the time of the making of this contract the logs there-in described were in the West Branch of the Au Gres river, and the quantity thereof was about 3,000,000 feet, a portion of which was white pine, and a portion thereof of Norway, being about 2,000,000 feet of white pine and 1,000,000 Nor-way; and operations in sawing commenced in the latter part of August, 1883, and there was ready on the dock for ship-ment that fall about 1,335,000 feet of the said lumber.

The defendant paid freight and saw bill to the amount of $4,818.16; but claimed that it was not obliged, under the con-tract, to pay for the lumber till 90 days after the date of shipment, and that it was not obliged to ship the same until 30 days after all the lumber was sawed and piled upon the dock.

It seems that the verbal talk before the execution of this contract was between the plaintiff and William R. Monroe, the president of the defendant corporation, at Tawas, Michi-igan.   Monroe went to Cleveland, Ohio, his home, and from there sent to Jenkinson, at Port Huron, a written contract and a duplicate thereof, embodying the agreement, both exe-

cuted by the defendant. Upon receipt of the same, Jenkin-
son interlined in both copies the words "and said lumber
shall be shipped within thirty days after the same is sawed and
piled," and signed both the original and the duplicate, and
returned one to the defendant, informing it of the omission,
and the interlineation by him, as he claims.

About September 1, 1883, there was due plaintiff, upon an
estimate, about $1,200 for railroad charges, and he drew a
draft for that amount upon defendant, which was accepted
and paid.

About October 1, 1883, upon an estimate made by plaint-
iff and one Richardson (whom the parties had agreed should
inspect the lumber), there was due the plaintiff about $3,600
for freight and saw bill. He drew a draft on defendant for
that amount, which was not paid. October 20, 1883, he
went to Cleveland, and got a note of defendant, with
indorser, for the $3,600, which was afterwards paid.

During the months of October and November, 1883, upon
other estimates, he drew two drafts upon defendant, which
were not paid. A correspondence then ensued between the
parties, continuing until February, 1884.

No shipment of lumber was made by defendant in the sea-
son of 1883. On the first day of November, 1883, there
was sawed and piled upon the dock about 1,335,000 feet of
this lumber.

April 24, 1884, the plaintiff caused a writ of attachment
to issue in the circuit court for the county of St. Clair
against the defendant. The sheriff, under said writ, levied
upon this lumber, and also upon a pile of lumber upon the
docks at Tawas belonging to defendant, and bought by it of
the Saginaw Salt & Lumber Company. Just before the levy
by the sheriff the defendant had sent a vessel there, and
loaded and shipped away 367,530 feet of the lumber is ques-
tion here.

The plaintiff in his suit proceeded upon the theory that
the title to the lumber sawed and piled upon the dock had
passed to the defendant, and recovered judgment for the
amount and value of the lumber upon the dock at the con-

tract price, to-wit, $15,497.80. There was quite an amount of the logs sawed into lumber and piled upon the dock in the summer of 1884, but they were not included in the judgment.

The defendant pleaded the general issue, and also gave notice under that issue that it would prove that plaintiff had not performed the contract; that it should have been completed in a reasonable time, which would have been in the fall of 1883; and asking damage for such non-performance. Also that the plaintiff refused to deliver the lumber, or any part of it, to the defendant, under the contract; and that, after the issuing of the attachment, the plaintiff received all the lumber from the sheriff, and converted and disposed of the same to his own use; and claiming to recoup damages therefor.

It appeared upon the trial that the plaintiff, after the levy under the writ, gave an indemnity bond to the sheriff, and took the lumber sued for into his possession, and sold the same, without further proceedings, to various parties, at prices ranging from a dollar to two dollars less per thousand than the contract price.

The assignment of errors may be discussed under four propositions:

1. Did the title to the lumber pass to the defendant by the contract, when sawed and piled upon the dock?
2. Under the contract was the defendant required to ship any portion of the lumber until the whole was sawed and piled upon the dock?
3. Was it competent for the parties, by mutual arrangement, to determine on any other or different time of payment than that stated in the contract, without such arrangement being reduced to writing?
4. Could the plaintiff, after taking the lumber and selling it, and appropriating the proceeds to himself, thereafter recover judgment against the defendant for the entire value of the same?

In regard to the first proposition, the contract does not, in terms, provide for any inspection of the lumber; but it appears from the evidence that the parties agreed verbally

upon an inspector (W. W. Richardson), who, it was understood, should have the charge of the shipping.

As the lumber was piled on the dock it contained some mill culls and some Norway, which had to be assorted at time of shipment.    Richardson also sold the lumber for plaintiff after attachment, and testifies that, in about 1,300,000 feet, there were 38,954 feet of mill culls and 9,414 feet of Norway.    It is claimed by the defendant that, it being optional with the plaintiff whether defendant took the culls or not, if plaintiff elected to keep the culls, then they must necessarily be selected out from the other lumber, and the Norway had to be sorted out also; and that, therefore, an inspection was necessary, and the title would not pass until such inspection.

The plaintiff contends that when the lumber was piled upon the dock he had no further control over it.    The lumber was then ready for shipment, and could be shipped at any time by the defendant without any notice to plaintiff, and that the only object of inspection, and the only interest the plaintiff had in it, was to ascertain definitely the exact number of feet to be paid for by the defendant; and insists, also, that the defendant, both before and after suit, treated the lumber as its own.

But this is denied by the defendant.    The circuit judge ruled that the title passed with the piling upon the dock. We think his action was correct in so holding.    A person had been selected to measure the lumber before shipping, and there was nothing remaining to be done by the plaintiff. Really, only the quantity remained to be ascertained, and the method of doing this was provided.    The lumber was ready to ship when defendant was ready to take it; and the portion shipped by defendant was loaded without the knowledge of plaintiff, and it is plainly apparent that if there had been no trouble about the time of shipment or payment, the lumber would all have been shipped without the plaintiff having any further dominion over it, or any voice or participation in its measurement.    There was nothing further to be done in which both parties had to concur, or in which the plaintiff had a right to take part, under the agreement.    The amount

of mill culls and Norway was insignificant, and the sorting of the same from the white pine lumber, of other grades than mill culls, was to be done by Richardson. The piling on the dock seems to have been intended by both parties as a delivery of the lumber to defendant, who could thereafter ship it without reference to plaintiff. See *Sandler v. Bresnaham*, 54 Mich. 342, and cases there cited.

Under the second proposition the question is presented as to when, under the contract, the defendant was required to ship the lumber. The circuit judge ruled that it was the duty of the defendant, under the contract, to ship the lumber within thirty days after it was sawed and piled upon the dock, in the usual course of business of sawing the logs; that the defendant was not authorized to wait until all the lumber was sawed and piled, but should ship it in reasonable lots, thirty days after the piling of the same.

In connection with this question there arose the controversy mentioned in the third proposition, which may as well be discussed in this connection. The plaintiff testified that he went to Cleveland in the last of October, 1883, and had a conversation with William R. Monroe, the member of the corporation defendant who signed the contract, and that in such talk Monroe said to him : "According to that contract, I have got to ship that lumber, or pay for it, in such a length of time after it is sawed. Now, there will be some of that sawed so we can't ship it until after the close of navigation," —thus admitting an understanding of the contract as claimed by plaintiff ; and that he thereupon agreed with said Monroe that what was sawed so late that it could not be shipped in thirty days after it was sawed he would not ask any pay for until after navigation opened in the spring.

When the defendant Monroe was on the stand the counsel for defendant offered to prove by him, and subsequently by another witness, that at the time referred to by plaintiff he charged the plaintiff with altering the contract by interlining the thirty-day clause hereinbefore set out, and said to him that it might be construed that defendant must ship or pay for the lumber in thirty days; that it was not the contract, and

defendant would not submit to or be bound by it; that plaintiff said it was a mere form, and he did not expect it to operate, and that defendant could go ahead and ship it when it got a chance; and that it was finally agreed between them that the defendant should have the benefit of the ninety days under the contract,—ninety days from the date of shipment,—and to ship the lumber in the fall if it could, and, if not, in the spring; that before this arrangement was made the witness refused to pay the drafts of plaintiff, or any more money to him, but, upon this agreement being made, paid him the $3,600 by note.

This evidence was objected to as incompetent, it being a verbal modification of a written contract. Upon the claim being made by defendant's counsel that it was certainly proper in rebuttal of the conversation testified to by plaintiff, the court at once struck out all of the evidence of Jenkinson in reference to the modification of the contract. He then allowed the witness to testify, but, after argument of counsel upon the question of its admissibility, finally struck it from the case, and excluded it from the jury.

We do not deem the clause, "and said lumber shall be shipped within thirty days after the same is sawed and piled," so definite and certain in its meaning as to justify the circuit judge in holding that, as a matter of law, the defendant must commence to ship within 30 days from the piling of a cargo upon the dock, and continue doing so thereafter as it was piled. It is not clear enough, in our opinion, to negative defendant's claim that it was not obliged to ship until all of the lumber was sawed and piled; nor does the time of payment of the freight and saw bills, expressed in the contract, render this clause unambiguous. The time of shipment should have been left to the jury, to find, from all the facts and circumstances of the case, what the intent of the parties was as to the time of shipment. It must be remembered, in this connection, that there could be no possible construction of the contract to the full extent as claimed by plaintiff.

The situation of the parties, the season of the year, and the

time of the ordinary close of navigation, with perhaps other circumstances, must be taken into consideration in interpreting this contract, and in ascertaining the intent of the parties executing it. It is evident from the contract that the lumber was to be conveyed by water, and lumber could be sawed and piled upon the dock up to the very hour navigation closed, and even after. It could not, therefore, be held that the defendant must ship the lots of lumber delivered close up to the end of navigation, or afterwards, within 30 days after its piling, when it would be an impossibility to ship it. And it would probably also be difficult, under the theory of the court below, in any event, to ship it all exactly within the 30 days, as fast as delivered on the dock, unless, as delivered, the ship cargoes were set apart, and the date of delivery noted; yet the court probably intended to instruct the jury that it should be so shipped as near as possible, and not to imply that there should be a strict compliance with the agreement as he construed it. It seems to us that neither the theory of the plaintiff nor defendant was correct as to the matter of the time of shipment. The agreement claimed to have been made by parol in Cleveland would appear to be the most reasonable construction of the contract in the first place,—that the defendant should ship all it could in the fall and the balance in the spring. But this was a matter for the jury, under proper instructions.

And we think the evidence of the conversation of the parties at Cleveland should have been admitted as bearing upon the question of the construction of the contract in this respect. Upon its face the contract was open to either interpretation, if the intent of the parties was clearly ascertained, from other facts and circumstances outside of the written agreement, to have been either way.

In other words, the meaning of this clause, as written, was uncertain, but not so uncertain but that it could be made certain by parol evidence, and the terms of the clause did not prohibit the meaning of the same as claimed by plaintiff, or as asserted by defendant.

But there is another consideration which rendered the evi-

dence admissible beyond question. The clause, "and said lumber shall be shipped within thirty days after the same is sawed and piled," upon. which this controversy is founded, is admitted to have been interlined by the plaintiff in the written contract, after it had been signed by defendant and forwarded in duplicate to plaintiff. Plaintiff swears that he wrote defendant or Monroe of this alteration. Monroe, who acted for defendant, denies receiving such notice, and claims that defendant did not become aware of such interlineation until about the time the trouble came up as to the payment of this draft of $3,600; and that such alteration was unauthorized, and no part of the contract as made; and that the interlineation was never consented to by him or the defendant.

Upon this dispute as to whether this clause was a part of the written contract as executed by the parties, or contained therein when it was executed, this agreement in parol was made as to what the interpretation of the contract should be as to time of shipment and payment.

It was clearly admissible, as tending to show a final settlement and interpretation by the parties of an open and disputed question, not settled in the written contract as originally executed by the defendant, it being claimed by defendant that the contract, as executed by plaintiff, was not the same as when signed by defendant; and the question of the authority of the plaintiff to make the interlineation in the first place, or as to its subsequent ratification by the defendant, being in issue between them.

The interlineation by the plaintiff after the signing in duplicate by the defendant being admitted, it was open to parol proof, in a controversy between the parties, to determine what the truth was as to the knowledge and consent of the defendant to such alteration. The interpolated clause could not become a part of the written contract without proof of the assent of defendant to such interlineation.

And it being open to parol proof to determine this question, it was also competent for the parties to determine by parol, in settlement of the dispute and controversy between

61 MICH—30

them, what the time of shipment and payment should be under their contract, without trenching upon, or bringing themselves within, the prohibition of the statute of frauds.

If the defendant's claim, as shown in the excluded statement of Monroe, which agrees in the main with the testimony of plaintiff as to what the arrangement was as made at Cleveland was true, then the contract was evidently agreed upon to. be treated as it was when it left defendant's hands, and before this clause was interpolated by plaintiff.

With this clause out, the time of shipment would not be stated in the written contract; but the law would imply that it must be shipped in a reasonable time; and the agreement claimed to have been made at Cleveland, and which was proposed to be shown by this excluded testimony, would be, as heretofore suggested, in our opinion, not only a reasonable interpretation of the contract with the clause retained, but a reasonable performance of the contract without the clause; so that, in no sense, can it be said to alter, vary, or modify the terms of the written contract itself.

According to the terms of the contract without the clause in dispute, the balance, after payment of freight and saw bills, was to be paid "at ninety days from date of shipment of said lumber."

The reasonable time for shipment, under such a contract, would be that all should be shipped that could be before navigation closed, and the balance as soon as it opened in the spring; and this was the substance of the Cleveland agreement.

The court was also in error in allowing the plaintiff to recover for the lumber which he had appropriated to his own use. The effect of the verdict is to enable the plaintiff to both "keep and eat his cake." There is no justice or law in such a proceeding. The only plea interposed here in favor of this ruling of the court below is that this suit must be settled upon its *status* at its commencement; that the plaintiff took and sold the lumber after suit was brought, and the defendant must look to the sheriff for his lumber.

Upon the theory that the defendant owned the lumber, the

plaintiff took the same without right, and was a trespasser under his own showing and holding. It is not desirable to multiply actions; nor is it necessary, under such theory, for the defendant to pay plaintiff for the lumber in this action, and then thereafter sue him or the sheriff for the same lumber. The plea of the defendant in this case as sufficiently apprised the plaintiff that it would recoup the value of the lumber taken by plaintiff against his claim as a plea of *puis darrein continuance* would have done, and must be treated as having the same effect. By the plaintiff's own theory, under which he recovered, the value of the lumber at the time he converted it should have been treated as a payment, as far as it would go, upon his claim for lumber sold and delivered.

The judgment is reversed, and a new trial granted, with costs to defendant.

The other Justices concurred.