ANTON FOUGNER, ASSIGNEE, ET AL.

v.

THE FIRST NATIONAL BANK OF CHICAGO AND BENBOW B. FERGUSON.

*Insolvency—Contracts—Construction—Evidence.*

1.   In construing contracts, the intention of the parties is to be ascertained, if possible, from the terms thereof.

2.   The fact that under the terms of a given contract, one of the parties

Fougner v. First National Bank of Chicago.

thereto is to be compensated by a share of the profits, is not conclusive of a partnership, though standing alone indicates a partnership.

3. Where the terms used in a written contract make the intention obscure and the agreement ambiguous, it is competent to resort to the construction that the parties have given to it by their acts under it, and the understanding that they have expressed to each other and to others as to the relation existing between them.

4. It is proper in such cases to admit in evidence statements made to commercial agencies, where the same shed light upon the contract in question.

6. In the case presented, the propriety of the order of the County Court involved, depending upon the question whether a partnership existed between one of the defendants and an insolvent named, this court holds that the agreement considered was one for services and a loan, and not for partnership.

[Opinion filed July 23, 1891.]

Appeal from the County Court of Cook County; the Hon. Richard Prendergast, Judge, presiding.

Messrs. J. K. Wilson, Weigley, Bulkley & Gray, and Kraus, Mayer & Stein, for appellants.

Messrs. Gregory, Booth & Harlan, for Ferguson, appellee.

Moran, P. J. This is an appeal from an order of the County Court of Cook County, in the matter of the voluntary assignment of P. R. McLeod. The propriety of the order depends upon the question whether a partnership existed between B. B. Ferguson and said P. R. McLeod. Said McLeod commenced business as a dealer in engineer and steam fitters' supplies, etc., in March, 1886, having at the commencement but a small capital. In January, 1887, by an agreement between said McLeod and one Charles W. MacHugh, it was arranged that MacHugh, who had theretofore been in the employ of McLeod as bookkeeper, should advance to McLeod the sum of $100, to be used in the business, with the understanding that he was to receive a

certain share of the net profits of the business in addition to his salary, to be computed upon the said $100. The salary of said MacHugh was agreed to be $25 per week, and in addition to the salary, McLeod agreed to pay to MacHugh the said $100, and two-fifteenths of the net profits arising from said business, on or before the 7th day of January, 1888. It was also agreed that McLeod should not draw from the business to exceed $25 per week during the continuance of the agreement, and further, that if either party became dissatisfied with the arrangement, he should be at liberty to close the same by giving the other three months notice. During the latter part of 1887 and the early part of 1888, McLeod was in need of additional capital in his business, and after borrowing from one or two persons, entered into negotiations with Ferguson, which resulted in the making of the following agreement:

"This agreement, made this 10th day of March, A. D. 1888, between Peter R. McLeod, Charles W. MacHugh and Benbow B. Ferguson, of Chicago, Cook County, Illinois, witnesseth:

"1.   Said Ferguson agrees to enter into the business now carried on at Nos. 345 and 347 South Canal Street, in said city, by said McLeod and MacHugh, under the name of P. R. McLeod, to advance to said business to be used therein, the sum of $5,000, to take general charge of the office, finances, books, correspondence, accounts, sales, or other matters connected with the business.

"2.   As compensation for his services and the use of the money so advanced by him, he shall receive a salary at the rate of $25 a week and such a proportion of the net profits of said business as said sum of $5,000 shall bear to the total present net investment in said business.

"3.   In estimating said profits, the salary of said Ferguson and like salaries to said McLeod and MacHugh, being $25 per week each, shall be deducted with the other expenses of carrying on said business, from the gross proceeds thereof, and no moneys other than said sum of $25 per week shall be drawn by either of said parties for private purposes.

"4.   This agreement shall last for one year from the date hereof, with the right to either of said parties to terminate the

same at the end of the year, or at any time thereafter, by giving three months notice in writing of the desire so to end the same. Such notice to be given by the party desiring to terminate the agreement to each of the others, and in case of such determination, said Ferguson shall be entitled to have repaid to him his said sum of $5,000, and any further sums he may have advanced, and shall also receive his proper share of the net profits of the business at the time the agreement shall be so terminated.

" P. R. McLEOD,

" C. W. MacHUGH,

" BENBOW B. FERGUSON."

The agreement was drawn up by Ferguson himself, and it appears from the testimony, that when he came to write it, the agreement between McLeod and MacHugh could not be produced, but McLeod detailed to Ferguson the substance of the MacHugh agreement. Considering the different terms of this agreement, it is not an easy matter to determine whether it constituted the parties to it partners, or not. In construing such an agreement, the rule that is given for construing all contracts, controls—that is to say—the intention of the parties is to be ascertained, if possible, from the terms of the instrument.

Now, this agreement gives contradictory indications. From the words, "said Ferguson agrees to enter into the business now carried on," and "to advance to said business to be used therein, the sum of $5,000," an intention to form a partnership would be inferred, but the balance of the first clause of the agreement specifies what Ferguson is to do, and the second specifies the compensation for his services and for the use of the money advanced by him. This would indicate an employment. The fact that the use of the money advanced by him is to be compensated by a share of the profits in the proportion of said sum to the total investment, is not conclusive of a partnership, though standing alone it indicates a partnership. Participation in profits does not necessarily constitute one a partner. It would depend on the intention of the parties to the contract when ascertained from the entire agreement, whether

participation in the profits was to constitute a partnership or not.

The rule for construing such agreements is thus stated by our Supreme Court in the case of Niehoff v. Dudley, 40 Ill. 406: "This, like all other agreements, must be enforced according to the intention of the parties, and that intention can only be ascertained by the language employed in the agreement itself. As a general rule, when the agreement provides for a division of profits simply, the law will infer a partnership; but even then, the first and controlling element in the contract is the intention of the parties between themselves.

"If from the agreement anything appears which repels the inference of such an intention, then as between the parties they are not partners. This rule, however, is different as to third persons, for in that case the general rule is, that a participation in the profits renders them partners; but this is where there are no opposing circumstances. If from the circumstances of the agreement of the parties, it satisfactorily appears that the share of the profits is not taken in the character of a partner, but in the character of an agent, or as a compensation for labor, services or advances made, the rule is otherwise. There is no absolute rule of law that a participation in the profits renders the participant a partner. It is only a presumption of the law which prevails in the absence of controlling circumstances, but is controlled by them. This seems to be the extent of the rule announced by the authorities."

We are of opinion that there are in this contract terms which repel the inference of an intention as between the parties to become partners. What is most usually contemplated by men who are entering into a partnership, is a share in the profits and the losses, and it is generally understood that each partner will risk the money that he advances and if his share of the loss exceeds such sum, that he will be liable to the others to make it up.

Now, by the terms of this agreement, all that Ferguson risked was the chance of getting no interest or profits on his money. There is no indication that he is to bear the burden

of any loss that should go to the depletion of his capital.   On the contrary, it is expressly provided that on the termination of the arrangement all money advanced by him shall be paid back to him.   True, there might be such a provision in a partnership contract, and the parties still be partners; but it will be where, from the entire contract and not from that provision alone, it is indicated that they intended to be partners in fact.

These contrary indications in the written contract make the intention obscure and the agreement ambiguous.   In such case it is competent to resort to the construction that the parties have given to it by their acts under it, and the understanding that they have expressed to each other as to the relation existing between them.   Wharton on Ev., Sec. 941.   We find that though Ferguson made large advances for the furtherance of the business, he seems to have had little to say about the management or conduct of the business itself.   He was a sort of general manager, as far as the finances and the accounts and sales were concerned, but his work with reference to the sales appears to have been done under McLeod's general supervision.   The business continued to be conducted in McLeod's name.   Ferguson, though he had charge of the financial branch of the business, kept the bank account in McLeod's name, and though he drew checks, he did so in pursuance of a power of attorney, given him by McLeod.   The fact that Ferguson gave attention to the business and was represented by McLeod in his presence to parties as being interested therein, has no significance as an act of the parties tending to show a partnership.

His contract with McLeod obliged him to give attention to the business, and the statement that he was interested therein was the statement of an obvious fact, the truth of which he could not be expected to deny in view of his written contract and the fact that his investment made him interested in the success of the business.   Certain statements by McLeod, while the business was being conducted under the contract, show what his understanding of the contract was.   MacHugh, a party who signed the contract, but who himself never claimed

to be a partner with McLeod or with Ferguson, and who, it is not contended, was a partner, notwithstanding the similarity of his contract with Ferguson's, states that McLeod told him after the making of the Ferguson agreement, that he, McLeod, owned the business, that he had no partner and never would have any. Fogg, the bookkeeper, testifies that McLeod asked him if he thought Ferguson was a partner. Fogg said he didn't know anything about it. McLeod replied that he had no partner, never had a partner, and that Mr. Ferguson was not his partner. These statements are probably competent, the question on which the expression was given being whether a partnership then existed as McLeod understood it. It shows what *his* intention was; but a most significant verbal act occurred when the manager of R. G. Dun & Company had an interview with McLeod in the presence of Ferguson with reference to the rating of McLeod as a business man. McLeod stated that Ferguson looked after the financial part of the business. McLeod was asked whether this was a partnership. The questioner desired to distinctly understand whether they were or were not partners. McLeod said no, there was no partnership, and Ferguson, on being asked if he was a partner, said he was not. The question was asked of McLeod in Ferguson's presence, and of Ferguson in McLeod's presence, and they both stated that there was no partnership.

This we regard, not as an opinion construing a written contract, but a verbal act showing how the parties to the instrument themselves construed it when called upon to do so. Of course such construction could not avail against a clearly expressed intention in the instrument, or an intention drawn from all its parts by fair legal construction, but where, after an attempt to draw a consistent intention from the entire instrument there is still uncertainty and ambiguity, we think, as before said, that such construction by the parties, although it consists of verbal declarations, is a competent aid in reaching the true intent. Wharton on Ev., Sec. 937 to 942; Jenkinson v. Monroe, 61 Mich. 454; Delano v. Goodwin, 48 N. H. 203.

We are of opinion that whether Ferguson so conducted him-

self in relation to the business as to create an estoppel against him to deny to third parties who gave credit on the assumption that he was a partner by reason of his holding himself out as such, is not a pertinent question to be now considered; but assuming that it has some significance, and the counsel on both sides seem to think it has, then we say that we have found no acts of holding out on the part of Ferguson, which will justify the conclusion that he should be held as a partner as to third persons.

It is unnecessary to discuss the evidence on that branch of the case in detail.

While admitting that there are arguments of considerable force in support of the contention that the contract made Ferguson and McLeod partners, we are constrained, from the best consideration we have been able to give the matter, to the conclusion that the agreement was one for services and a loan, and not for partnership as between Ferguson and McLeod.

The order of the County Court appealed from will therefore be affirmed.

*Order affirmed.*