DELOS A. BLODGETT, SURVIVOR, ETC., v. HORATIO N.
HOVEY AND JOHN B. McCRACKEN.

*Sale—Contract—Passing of title.*

1. Log-owners contracted with mill-owners to deliver to them
30,000 saw-logs, or the number necessary to make 3,000,000
feet of merchantable piece stuff, for manufacture at a given
price. The lumber was to be dead piled upon the mill-owners'
dock, and the log-owners agreed to sell it to the mill-owners
at stated prices for that which was merchantable, and for the
culls, on 60 days' credit from date of shipment, which was to
be made promptly as fast as cargo was cut and piled on the
dock. The mill-owners contracted for the sale of the entire
cut of lumber, and, after shipping 2,882,602 feet, their mill,
and the remainder of the lumber then piled on the dock, were
destroyed by fire. And, in a suit by the log-owners to collect
the contract price of the lumber so destroyed, it is held that
there is nothing in the contract itself which necessarily indi-
cates that the log-owners intended that the title to the logs or
the lumber should pass until quantity and quality were deter-
mined, and that under the contract something remained to be
done by the vendors, as no inspection had been provided for,
and that, standing upon the contract alone, the plaintiffs
could not recover.

2. The testimony on the part of the mill-owners tended to show
that, after they had commenced sawing the lumber, one of
the log-owners inquired of one of the mill-owners if they were
cross-piling it, and, on being asked why he made the inquiry,
replied that if it was being cross-piled they (the log-owners)
would put some insurance on it, but if it was being dead piled
they would not do so; and the mill-owners claimed that
because of this conversation they did not insure the lumber.
And it is held that the intention of the parties as to the pass-
ing of the title to the lumber was, in the light of their acts
and what was done after the execution of the contract, a
question for the jury.

Error to Kent. (Adsit, J.)  Argued February 18, 1892.
Decided May 13, 1892.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinions.

*Smith, Nims, Hoyt & Erwin,* for appellants.

*Uhl & Crane,* for plaintiff, contended:

1. The title to the lumber passed to the defendants when it was dead piled on their dock, although it was necessary to inspect and measure it in order to ascertain the aggregate price of the lumber at the contract price; citing *Riddle v. Varnum,* 20 Pick. 280; *Scott v. Wells,* 6 Watts & S. 357; *Dennis v. Alexander,* 3 Penn. St. 50; *Crofoot v. Bennett,* 2 N. Y. 258; *Burrows v. Whitaker,* 71 Id. 291; *Bogy v. Rhodes,* 4 Greene (Iowa), 133; *Sewell v. Eaton,* 6 Wis. 490; *Morrow v. Delaney,* 41 Id. 149; *Leonard v. Davis,* 1 Black, 476; *Young v. Matthews,* L. R. 2 C. P. 127; *Mining Co. v. Senter,* 26 Mich. 73; *Haskell v. Ayres,* 35 Id. 89; *Grant v. Bank,* Id. 515; *Colwell v. Iron Co.,* 36 Id. 51; *Byles v. Colier,* 54 Id. 1; *Jenkinson v. Monroe,* 61 Id. 454; *Wagar v. Railroad Co.,* 79 Id. 648; *Sedgwick v. Cottingham,* 54 Iowa, 512.

McGRATH, J. On the 22d day of August, 1889, plaintiff wrote to defendants as follows:

"*Gentlemen*: We will order the Muskegon Booming Co· to deliver you 30,000 of our logs, marked '179,' or as many as it will take to make 3,000,000 feet of merchantable piece stuff; you to saw same, and dead pile lumber on your dock, at $1.50 per M. feet. We will also sell you the lumber from above logs at the following prices, viz., $8.62½ per M. feet for merchantable lumber; $4.50 per M. feet for culls, 6 and 8 feet. Terms, 60 days from date of shipment, which shall be made promptly as fast as cargo is cut and dead piled on your dock."

Defendants appended the following reply to plaintiff's letter, and returned the letter:

"*Gents*: We accept of the above."

The logs were delivered to defendants before August 28, 1889. Prior to the 29th of October, 1889, defendants had cut from these logs 2,882,602 feet of lumber, and the same had been shipped away. On October 28 there was

upon defendants' dock, in dead pile, 75,000 feet of lumber cut from these same logs, and between October 28 and November 4, 1889, defendants had cut up 2,877 of said logs, which made 304,100 feet of lumber. On November 4, 1889, defendants' mill was burned, and this 379,100 feet of lumber was destroyed. Plaintiff sues for the contract price of the lumber, and defendants insist that at the time of the fire the title had not passed. The court directed a verdict for plaintiff, and defendants appeal.

Defendants entered into contracts with third parties for the sale of this entire cut. Two of the defendants' witnesses testify that, after defendants had commenced sawing the lumber, plaintiff came to defendants' office, and "asked Mr. Hovey if they were cross-piling the lumber from that stock, and Mr. Hovey asked him why. He said if they were cross-piling it they would put some insurance on it; if they were not cross-piling it, and dead piling it, they would not place any insurance on it." Plaintiff admits a conversation relative to insurance upon the lumber, but claims that it was had before the contract was entered into.

This contract is not one for the sale of logs. The proposition was to deliver to defendants "30,000 logs, marked '179,' or as many as it will take to make 3,000,000 feet of merchantable piece stuff," to be sawed for plaintiff at a given price, or to deliver to defendants 30,000 logs, marked "179," or as many as it will take to make 3,000,000 feet of merchantable piece stuff, and to sell to defendants the lumber to be manufactured from such logs at given prices. The contract does not provide for the sale of a given quantity of logs at the rate of $7.12½ per M. feet for merchantable lumber, and $3 per M. for culls, 6 and 8 feet; but is to pay $1.50 per M. for sawing the lumber, and then to sell the

lumber at given prices. The lumber was figured and charged at the prices given in the contract, and the saw bill was credited. In plaintiff's bill of particulars the amount of $27,515.80 is charged to defendants at the rates given in the contract, and they are credited with the sum of $4,892.55 for sawing the lumber. The lumber was not cross-piled but was dead piled, as the contract provided. It is clear that no title passed to the logs, and the question is, when did the title to the lumber manufactured therefrom pass? The rule is well established that,—

"When the goods are ascertained, the parties are taken to contemplate an immediate bargain and sale of the goods, unless there be something to indicate an intention to postpone the transference of the property till the fulfillment of any conditions; and when by the agreement the seller is to do anything to the goods for the purpose of putting them into a deliverable state, or when anything is to be done to them to ascertain the price, it is presumed that the parties mean to make the performance of those things a condition precedent to the transference of the property. But as these are only rules for construing the agreement, they must yield to anything in the agreement that clearly shows a contrary intention." Blackb. Sale, 124; *Lingham v. Eggleston*, 27 Mich. 324; *Byles v. Colier*, 54 Id. 1.

There is nothing in this contract that rebuts this presumption. As in *Lingham v. Eggleston*, neither quantity nor quality of the lumber is determined. As in *Jenkinson v. Monroe*, 61 Mich. 454, the parties subsequently agreed upon an inspector, but it was agreed that the inspection should be had at the time of the shipment of the lumber. In the Jenkinson case the contract was for all the lumber to be cut from a given lot of logs; defendant was to pay for freighting the logs to the mill, and was also to pay the saw bill, and was to direct as to how the lumber should be cut. The terms of the con-

tract itself tended to negative the presumption that the title was to remain in the vendor after the logs had been cut in accordance with the directions of defendant, it had paid freight and saw bill, and the lumber had been "delivered upon the dock."

In the present case there is nothing in the contract itself which necessarily indicates that the plaintiff intended that the title to either logs or lumber should pass until quantity and quality should be determined. Under it something remained to be done by the vendor, as no inspection had been provided for. It is true that the lumber when manufactured would be in possession of defendants, but the title to the logs was clearly in plaint. iff, and it cannot be insisted that the title to each board passed as it came from the saw, or that the act of defendants, in the absence of some indication of such intent on the part of plaintiff, should pass the title. Standing upon the contract alone, defendants would be entitled to a verdict.

A different intent can only be gathered, if at all, from a consideration of the contract in the light of the acts done after its execution; but all that was done should be considered. Here there was more than the mere naked appointment of an inspector. If it was true that, after the defendants had commenced sawing, plaintiff went to defendants' office, and had the conversation related respecting the insurance of the lumber, and defendants did not insure this lumber in consequence, that conduct would seem to be conclusive as to how the parties themselves construed the contract; and the mere agreement upon an inspector, who, at the time of shipment, was to distinguish between the three grades of lumber, and fix the amount to be paid by defendants to plaintiff, would not disturb that construction. If, at that time, plaintiff put such a construction upon the

contract, and defendants acquiesced in it, and in consequence defendants refrained from insuring the lumber, plaintiff cannot now insist upon a different construction to defendants' prejudice. One of the defendants' witnesses who had testified to the conversation between plaintiff and defendant Hovey relative to the insurance, and that the conversation had been subsequently, and within two or three days, recalled, was asked, upon cross-examination, what the occasion was for recalling that conversation, and replied:

"The occasion was this: I had to figure up the amount of lumber on the dock, and keep track of the insurance, and we did not place any insurance on this lumber, and that was the reason why."

The witness was then asked:

"Q. You expected, then, it was going to burn up?
"A. We expected if it did burn they would have to look after the insurance. That is the reason I did not keep track of it."

Under these circumstances, including the conduct of the parties after the execution of the contract, the intent of the parties was a question of fact, which should have been submitted to the jury under proper instructions.

The judgment below is reversed, and a new trial ordered, with costs of this Court to defendants.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred with McGRATH, J.

GRANT, J. (*dissenting*). There is no dispute as to the material facts in this case. Upon one point only, to be hereinafter noted, is there any conflict of evidence. After the execution of the contract of sale, Blodgett & Byrne, through the boom company, delivered to the defendants the 30,000 logs specified in the contract. They sawed and dead piled the lumber as it was sawed

from them on their docks. They sold the entire cut, and 2,882,602 feet had been shipped by their vendees. The bills of sale executed by defendants to their vendees were as follows:

"Sold to * * * on dock at Muskegon, Mich., the following lumber: About * * * feet [here follows the description.] Terms: * * * To be tallied by * * *. Expense of tallying to be equally divided."

It was the custom, without reference to any contract, to tally the lumber when shipped. An inspector had been agreed upon, and, as the lumber sold by defendants was loaded on board the vessels, the inspector rendered a duplicate certificate, one to Blodgett & Byrne and the other to defendants. Blodgett & Byrne paid for the inspection, one-half of which was charged by defendants to their vendees, and was paid by them. The master of the vessel loaded the lumber from the dock, and defendants' vendees paid for loading.

It is conclusively shown that Blodgett & Byrne had fully performed their contract; that the delivery of the subject-matter of the contract was full, complete, and final; that after delivery they had no control or dominion over the property; that they had surrendered possession, and all right of possession; and that the defendants had taken the entire control of and dominion over it, and had sold it, not as the agents of Blodgett & Byrne, but as the owners of the property themselves. Under the final clause in the contract, "Terms, 60 days from date of shipment, which shall be made promptly as fast as cargo is cut and dead piled on your dock," defendants were clothed with the right to sell the lumber. They possessed this right by virtue of their ownership, and not as the agents of Blodgett & Byrne. No question of agency is involved. The relation of vendor and vendee

91 Mich—37.

was the only one contemplated by the parties by their
contract or their conduct.

It is insisted by defendants that the case of *Lingham
v. Eggleston,* 27 Mich. 324, is conclusive of this case in
their favor. That case is recognized as the leading one
in this State, and the principles there enunciated will be
recognized as the law. No doubt exists as to the law,
but the difficulty lies in adapting the peculiar facts of
each case to the law. An examination of the contract
in that case and the contract in the present case will
show that they differ in several material and important
particulars. The most important difference is that there·
no delivery had been made. The lumber was to be
delivered on board the cars. The vendor had not parted
with either possession or control, nor had the vendees·
assumed control over it. There was nothing upon the
face of the contract to show any intent that title should
pass before delivery. The fact of delivery in these cases
is always important, and in most cases conclusive. It
will be profitable to refer to some of the language of
this Court in considering the present case. · In *Lingham
v. Eggleston* it is said:

"The most important fact indicative of an intent that
title shall pass is generally .that of delivery. If the goods
be completely delivered to the purchaser, it is usually
very strong, if not conclusive, evidence of intent that
the property shall vest in him, and be at his risk, notwith-
standing weighing, measuring, inspection, or some other
act is to be done afterwards."

In *Byles v. Colier,* 54 Mich. 1, it is said:

"The title might pass even without delivery, if the
property were sufficiently identified, and even though
something remain to be done to fit it for delivery."

See the authorities there cited. The delivery in that

case was held to be all that the contract contemplated. In *Jenkinson v. Monroe*, 61 Mich. 454, it is said:

"A person had been selected to measure the lumber before shipping, and there was nothing remaining to be done by the plaintiff. * * * The lumber was ready to ship when defendant was ready to take it, and the portion shipped by defendant was loaded without the knowledge of the plaintiff. * * * There was nothing further to be done in which both parties had to concur, or in which the plaintiff had a right to take part under the agreement. The amount of mill culls and Norway was insignificant, and the sorting of the same from the white pine lumber of other grades than mill culls was to be done by Richardson. The piling on the dock seems to have been intended by both parties as a delivery of the lumber to defendant, who could thereafter ship it without reference to plaintiff."

It is said in *Wagar v. Railroad Co.*, 79 Mich. 648:

"No principle is more uniformly settled than that title passes by a sale of personal property, where such is the meaning of the acts of the parties; and it is equally well settled that, where nothing remains to be done by the vendor, title passes."

The above are well-considered cases, and contain numerous citations to the authorities. See, also, *Sandler v. Bresnaham*, 53 Mich. 567; *Grant v. Bank*, 35 Id. 515; *Adams Mining Co. v. Senter*, 26 Id. 73. Under these decisions I think the title had passed, and the court correctly directed a verdict for the plaintiff.

I think the present case is expressly ruled by *Jenkinson v. Monroe, supra*. It is true that there the contract was for "all the lumber to be cut from a lot of logs, marked 'Diamond J,'" but when delivery has taken place it is of no consequence whether the contract is for the whole or a portion of a given mass. No difficulty existed in determining the amount of the lumber dead piled upon the dock at the time of the fire. The amount and value were agreed upon at the trial.

The defendants gave evidence tending to show that at one time one Gray, who was in the employ of Blodgett & Byrne, told them that if they were cross-piling the lumber Blodgett & Byrne would place some insurance upon it; but if they were dead piling it, and would ship it away soon, Blodgett & Byrne would run their chances, and not take any insurance. This is denied by Gray, and forms the only dispute of fact in the case. If, however, Gray did make such a statement, and was authorized to make it, I do not think this can be held to change the plain terms of the contract, and its complete execution by the plaintiff.

Judgment should be affirmed.