## CONRAD L. NIEHOFF *et al.*

### *v.*

## CHARLES H. DUDLEY *et al.*

1. PARTNERSHIP—*where that relation exists, as between the parties themselves, and as to third persons.* As a general rule, when the agreement between parties engaged in business together, provides for a division of profits simply, the law will infer a partnership.

2. But even in such a case, the first and controlling element in the contract is, the intention of the parties. If from the agreement, any thing appears which repels the inference of such an intention, then, as between the parties, they are not partners.

3. The rule is different, however, as to third persons, for as to them the general rule is, that a participation in the profits renders them partners.

4. But this is where there are no other opposing circumstances. If, from the circumstances or the agreement of the parties, it satisfactorily appears that the share of the profits is not taken by the party sought to be charged in the character of a partner, but in the character of an agent, or as a compensation for services or advances made, the rule is otherwise.

5. There is no absolute rule of law that a participation in profits renders the participants partners; it is only a presumption of law, which prevails in the absence of controlling circumstances to the contrary.

6. But the rule as to the intention of the parties governing their relations with each other, does not prevail as to third persons, where the parties have held themselves out to the world as partners. In such case, they are estopped to deny the existence of a partnership.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. LEWIS UMLAUF, for the appellants.

Messrs. MCALLISTER, JEWETT & JACKSON, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by Charles H. Dudley and Samuel Gummer, in the Cook Circuit Court, against Peter J. Cass, William H. Ranstead, Conrad S. Niehoff, and Gustavus Troost. The declaration contained one special, and the common money counts. The special count was on five promissory notes, executed by Cass & Co. to C. H. Dudley, for different sums, and each specifies that the sum named is to be paid for furnishing a particular person therein named as a volunteer in the army or navy, and specifies as the time of payment, when the volunteer shall be received into the service. The declaration avers that each person thus named in the several notes, had been duly received into the service, and that the money was due and unpaid.

Niehoff and Troost pleaded in abatement that they were not partners with Cass & Ranstead in any business at the time these notes were given. Nor did they authorize them, or either of them, or any other person, to make these contracts on their behalf, or any or either of them. This plea was verified by affidavit. A replication was filed averring that the promises and undertakings were made by the defendants jointly and as copartners. A default was entered as to Cass and Ranstead; and a trial was had by the court and a jury, resulting in a verdict for $475.25. A motion for a new trial was entered by appellants and overruled, and a judgment entered by the court; and the cause is brought to this court by appeal for the reversal of the judgment.

It appears that Cass & Co. did business in a room in the rear of Niehoff & Co's. banking house, and that a door connected the two rooms. That Cass & Co. rented the room. There was

an article of agreement between the two firms read in evidence. It recites that Cass & Co. were to carry on and manage their business of substitute brokers at the banking house of Niehoff & Co., and to procure and furnish substitutes and volunteers for the army and navy of the United States. And Niehoff & Co. agreed and bound themselves, when necessary in the course of the business of the said firm of Cass & Co., to advance and disburse to said firm of Cass & Co., upon certificates of exemption, signed by Capt. James, U. S. provost-marshal, at the city of Chicago, or by Capt. Harty of Chicago, in his official capacity, sums to an amount not exceeding $5,000. And Cass & Co. agreed to pay Niehoff & Co. one-third of the rent of the office, and all other office expenses, such as light, fuel, etc., and to pay once a week or oftener if convenient and agreeable, the one-third of the profits in their business. The agreement also contained this stipulation : " This agreement is to be understood, and limited to the express specifications afore mentioned, and is not to be construed in a sense which connects or in any way combines the said firms of C. S. Niehoff & Co. with the said firm of Cass & Co. in the said business of said Cass & Co., as substitute brokers ; nor in any way to hold the said firm of C. S. Niehoff· & Co. liable and responsible for any agreements or acts whatever of the said firm of Cass & Co., in the course of said business of said Cass & Co., other than above specified and expressed."

Were it not for this last clause it might be, that these firms would have become partners as firms. But by it they have expressly excluded such an inference. This, like all other agreements, must be enforced according to the intention of the parties. And that intention can only be ascertained by the language employed in the agreement itself. As a general rule, when the agreement provides for a division of profits simply, the law will infer a partnership. But even then the first and controlling element in the contract is, the intention of the parties between themselves. If, from the agreement, any thing appears which repels the inference of such an intention, then, as between the parties, they are not partners. The rule is how-

ever different as to third persons, for in that case the general rule is, that a participation in the profits renders them partners. But this is where there are no other opposing circumstances. If, from the circumstances, or the agreement of the parties, it satisfactorily appears that the share of the profits is not taken in the character of a partner, but in the character of an agent, or as a compensation for labor, services, or advances made, the rule is otherwise.

There is no absolute rule of law, that a participation in the profits renders the participant a partner. It is only a presumption of the law, which prevails in the absence of controlling circumstances, but is controlled by them. This seems to be the extent of the rule announced by the authorities. And there is no hardship on third persons, where the party does not hold himself out as a partner. And this is only carrying into effect the intention of the parties, and is consonant with equity and justice. Story on Part. 58, § 38. Keeping this distinction in view, all of the apparently conflicting authorities may be readily harmonized with each other, and with the principles of justice and right.

The rule as to the intention of the parties as between themselves does not, however, prevail as to third persons, when they have held themselves out to the world as partners. In such a case they are estopped from denying the existence of a partnership. And it is for the obvious reason that if it should be permitted, it would result in fraud and wrong to persons dealing with them on the supposition that they were partners. By holding themselves out as partners, third persons are induced to extend them credit on the supposition that they are bound for the contracts of the firm. When a person assumes the character of a partner, he at the same time assumes all of the liabilities of that relation, as to third persons dealing with the firm. The assumption of the character is voluntary, and can only occur by his own acts, and no hardship can result from the rule, and it is but just, when he has induced others to give credit on the supposition induced by his own acts, that he should be held liable for its consequences.

Tested by these principles, it cannot be said, that it was the intention of the parties that the two firms should form a new partnership. But on the contrary, they expressly exclude the inference. And according to the rule, that the expression of an intention not to become partners must control the relations of the parties, we must therefore hold, that they did not occupy that relation to each other, and that the agreement did not create the relation or liability of partners as between themselves, or as to third persons.

A careful examination of the evidence fails to show that Niehoff & Co. at any time did or said any thing from which it could be inferred that they were partners. It is true, that Cass & Co. transacted their business in a part of their house, for which they paid them rent, and also paid a part of the expense of keeping the office; but that, of itself, does not prove, nor does it tend to prove, a partnership. Persons engaged in different business may undeniably carry on their various pursuits in the same office or room, without that circumstance creating the slightest presumption that they were partners. And in this case, Cass & Co. advertised and circulated their business cards in the name of their firm alone, both in and out of the office. The business was transacted in the name of their firm; and the notes on which this suit is brought were signed in the name of their firm.

The agreement to furnish not more than five thousand dollars, was in the nature of a loan. The firm of Niehoff & Co. was to receive as interest or compensation for its use, the third of the profits arising from its use. But we have seen that it did not make them partners. They do not seem on any occasion to have said or done any thing to any person, from which it could be. inferred that they were partners. It then follows, that from the facts disclosed in this record the firm of Niehoff & Co. were not liable, and the verdict of the jury is not sustained by the evidence, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*