Butler v. Merrick.

## SALOME E. BUTLER

### v.

## BRIDGET MERRICK.

*Partnership—Existence of—Special Agreement—Construction—Profits and Losses.*

1. In an action to charge the defendant as surviving partner of her brother, who was indebted to the plaintiff at the time of his death, it is *held:* That as between the defendant and her brother there was no partnership, their minds never having met on that proposition; that a certain agreement, the contents of which were unknown to the defendant, did not constitute them partners; and that the credit in question was not extended on the belief that they were partners.

2. Participation in profits and losses is not conclusive of the question whether a partnership exists.

[Opinion filed February 17, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. J. A. McCLERNAND and N. M. BROADWELL, for appellant.

It appears from the evidence that Speed Butler sank, or constructed, this shaft in 1880, and in December of that year commenced the business of raising and selling coal.

About this time Speed Butler, in view of forming a partnership with his brother Wert, adopted the name and style of "Speed Butler & Co.," and under that name and style carried on the business of the shaft up to the time of his death.

Thus the origin and continuation of the firm name is fully explained and shown; and it does not appear that appellant had any, the slightest, agency or instrumentality in coining the firm name or in holding the same out to the world. She is, therefore, not responsible for the conduct of her brother Speed, in doing business under a name and style which implied a partnership between him and some other party or parties.

To make appellant liable as a partner, upon the ground that she held herself out as a partner, it must not only appear that she did hold herself out as a partner, but it must be further shown that appellee had knowledge of such fact, and gave credit on the faith of it. Bowen v. Rutherford, 60 Ill. 41.

A partnership can not be proven by general reputation, and a person can not be made a partner in fact or in appearance, so as to bind him, except by his consent, admissions or acts. The declarations or acts of others can not bind him. Bowen v. Rutherford, 60 Ill. 41; Bishop v. Georgeson, 60 Ill. 484.

The provision found in the paper, that the profits and losses shall be divided in a certain way between the parties, does not, in law, constitute a partnership. This stipulation no more implies a partnership than it does a joint adventure as tenants in common. It is as applicable to the latter as it is to the former.

It is accordingly held that such a provision does not necessarily constitute a partnership between the parties. Niehoff v. Dudley, 40 Ill. 406; Dwinel v. Stone, 30 Me. 384; Donnell v. Harshe, 67 Mo. 170; Rice v. Austin, 17 Mass. 197.

In Niehoff v. Dudley, it is said by the court, page 409: ·

"There is no absolute rule of law that a participation in the profit renders the participant a partner. It is only a presumption of law which prevails in the absence of controlling circumstances, but is controlled by them. This seems to be the extent of the rule announced by the authorities. And there is no hardship on third persons when the party does not hold himself out as a partner."

Messrs. PALMERS & SHUTT, for appellee.

The contract was, by its very terms, executed. By the terms of the agreement, by present words of grant, "he hereby sells to the party of the second part, the one-fourth interest in the coal mine known as the Black Diamond Mine," and provides that one-quarter of the gains and losses shall, from that time, belong to his grantee.

There must always be a distinction in law as well as in fact, between an agreement for the formation of a partnership to embark in a new business and the sale of an interest in, or the admission of a new partner to an established business—a going concern. In one case a great variety of acts preparatory to the commencement of business must be performed ; in the other case the business does not begin, it only continues.

"When an existing partnership takes in a new partner by a written instrument signed by the old members and the new, which instrument recites the payment of a certain sum by the incoming partner, and conveys to him one-third interest in the assets, and consents that he shall have one-third interest in the profits, the new partnership is complete on the execution of the instrument." Phillips v. Nash, 47 Ga. 218; 1 Lindley on Partnership, 27.

Everything was done at and before the execution of the agreement which could be done to make it an executed one, and after the signing of the contract everything was done that can be imagined in order to carry it into effect.

It is an universal rule, that if one is a partner in fact he will be liable whenever discovered without any reference to his own acts or conduct with respect to the firm business.

WALL, J. The appellant was sued as surviving partner of Speed Butler, deceased. She denied by the proper pleading all liability as such partner, and thus presented the only issue of fact in controversy.

It was not disputed that the plaintiff below had a valid claim against Speed Butler and against appellant also, if, upon the facts, appellant could properly be treated as a partner.

Speed Butler had opened a coal mine upon a tract of land which seems to have belonged to his minor children. In doing so he became indebted to the appellant, his sister, in the sum of $13,000, and to secure her the following paper was executed:

"This agreement entered into this —— day of May, A. D. 1881, between Speed Butler, as trustee of Anna S. Butler, Jennie E. Butler and Arnold W. Butler, of the County of Sangamon and State of Illinois, the party of the first part, and Salome E. Butler, trustee, of the same place, the party of the second part.

" Witnesseth, that the party of the first part hereby sells to the party of the second part, in consideration of the sum of thirteen thousand dollars, and the agreements of the party of the second part hereinafter mentioned, the one-fourth ($\frac{1}{4}$) interest in the coal mine known as the Black Diamond Mine, situated on the southeast quarter ($\frac{1}{4}$) of section 4, township 15 north, range 5, west 3d P. M., in the County of Sangamon, State of Illinois, under the conditions following:

"*First.* One-quarter of one cent on each bushel of coal, to be deducted and paid to Speed Butler at the end of every month on all coal hoisted and sold in said month, as royalty, and this amount as royalty to be paid before anything else is paid from the proceeds of said mine.

"*Second.* Speed Butler to have entire management and control of all matters in connection with said mine.

" *Third.* A full and satisfactory settlement to be made at the end of each month, and whatever losses or gains of that month to be divided, one-quarter of such gains or losses to belong to Salome E. Butler and the remainder to belong to Speed Butler.

"*Fourth.* All coal to be taken from under the land belong-

ing to the heirs of said Speed Butler, and no coal to be taken out of said coal shaft from any other source, without the full consent and approval of said Speed Butler.

"*Fifth.* In case of the death of said Speed Butler, his executors, administrators or trustees to have the same authority as he himself now has in the premises.

"*Sixth.* If at any time this quarter interest now sold in said mine is to be resold, Speed Butler is to have the right to be first purchaser, if he so desires, at whatever price may be offered by any other *bona fide* purchaser, and this quarter interest can not be resold to any party that may be objectionable to said Speed Butler.

"*Seventh.* If at any time it should be considered by the parties advisable to connect "tile works" with said mine, the expense of so doing will be in the same proportion as one to three, and the profits or losses therefrom will likewise be in the same proportion.

"In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"SPEED BUTLER,        [SEAL]
"SALOME E. BUTLER."    [SEAL]

"The party of the first part hereby agrees to watch over and protect this interest in the same manner as though it belonged to himself.

"SPEED BUTLER."

The appellant testified that she did not read the paper, and only signed it because her brother told her to do so; that she did not know its contents and supposed it merely gave her security upon the property. It was never in her possession. She had no idea there was anything in it creating a partnership or any other liability on her part, and though she subsequently advanced $5,000 more to her brother, she never received anything from him in the way of a statement, or otherwise, to indicate such a relation. Her name did not appear on the books of the concern, which was conducted under the style of Speed Butler & Co., nor was there anything in the accounts to show that she was in any wise connected with the business. She was never consulted about the management of

it, was never at the mine but once, and the only transaction she had there was in the purchase of some coal for her own use. Speed Butler died in April, 1885, and appears to have been considerably in debt on account of his mining operations. Then for the first time appellant heard the claim made that she was liable as a partner.

It is not proved that she ever said or did anything from which a partnership can be inferred, aside from the execution of the paper above quoted.

This paper was spread upon the records of Sangamon County, June 13, 1881. The effect of so recording it need not be considered in the present case, for the reason that it does not appear the appellee ever knew of the existence of the paper or that it had been so recorded. As between the appellant and Speed Butler there was no partnership, for the reason that the minds of the parties never met on that proposition.

It is not at all probable that Speed Butler ever considered a partnership was thereby or otherwise created, and it is certain that she never so understood it.

The mere signing of this paper, not knowing or misapprehending its contents, would not make her a partner as between her and her brother. If the paper is such as to constitute a partnership according to the legal effect of its terms, and if a third person, relying in good faith upon the information derived from it, is induced to furnish goods or give credit upon the belief that the persons executing it are bound as partners, then a different question will arise. So far as this record discloses, the parties were not, as between themselves, partners, nor has the appellant done or said anything on which appellee may or does rely to incur such a responsibility. Upon the undisputed facts in proof we have no hesitation in holding there was no partnership.

We deem it unnecessary to discuss the provisions of the instrument in question. It is assumed by counsel for appellee that a participation in profits such as here stipulated for will constitute a partnership. Such may be a presumption, but it is not conclusive, prevailing in the absence of controlling cir-

cumstances, and subject to be so controlled.    If, upon an inspection of the whole instrument, it can not be inferred reasonably that a partnership was designed, then none would be inferred from this single provision.    Niehoff v. Dudley, 40 Ill. 406; Story on Partnership, Sec. 38; Bowen v. Rutherford, 60 Ill. 41.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*