## State National Bank v. Butler, Surviving Partner, etc.

1. *Partnership—When it Exists.—Sharing of Losses and Profits.—*The fact of sharing of losses and profits, spoken of in the books, is an important, if not a controlling, test in determining whether a partnership exists; but it is not infallible; it is subject to qualifications. (1) It must be a shar-

ing in the profits, as distinguished from merely making the profits the measure of compensation for services, or for the use of property, or money in the business. (2) There must not only be a sharing in the profits, but it must be done as a principal, and not merely as an employe, or as interest on a loan of money or for the use of property.

2. *Partnership—Existence of, etc.—Losses and Profits.*—The principle to be collected from the authorities appears to be that a partnership, even as to third parties, is not constituted by the mere fact of two or more persons participating or being interested in the profits of a business, but that the existence of a partnership implies also the existence of such a relation between the parties, as that each of them is a principal, and each an agent of the other.

**Memorandum.**—Action against surviving partner. Appeal from judgment for the defendant, rendered by the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed March 6, 1893.

## APPELLANT'S BRIEF.

In the leading work on the subject of partnership these propositions are stated: "Tenants in common, or joint tenants of a mine or quarry, may or may not be partners, and the mine or quarry itself may or may not be a part of the common stock. But it is highly inconvenient, if not altogether impossible, for co-owners of a mine or quarry to work it themselves without becoming partners, at least in the profits of the mine; and persons who work a mine or quarry in common are regarded rather as partners in trade than as mere tenants in common of land. The co-owners of mines may be partners, not only in the profits, but also in the mine itself. The co-owners are then partners to all intents and purposes and their mutual rights and obligations are determined by the law of partnership as distinct from the law of co-ownership." 1 Lindley on Partnership, 55; Fougner v. Bank, 30 N. E. Rep. 442. See also Winds v. Davenport (N. J.), 7 Atl. Rep. 295; Morse v. Richmond, 97 Ill. 303; Meehan v. Valentine, 145 U. S. 622; Phillips v. Nash, 47 Ga. 227; Gardt v. Brown, 113 Ill. 480; Fougner v. Bank, 30 N. E. Rep. 442; 17 Am. & Eng. Enc. Law, 829.

"Where a party of mature years and sound mind, being

able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself as to the nature of its contents, he will, nevertheless, be bound; for in such case the law will not permit him to allege, as a matter of defense, his ignorance of that which it was his duty to know, particularly where the means of information are within his immediate reach, and he neglects to avail himself of them." Black v. Railway Co., 111 Ill. 358.

JOHN MAYO PALMER and CONNOLLY & MATHER, attorneys for appellant.

### APPELLEE'S BRIEF.

The law giving effect to the intention of the parties, the instrument, if valid at all, must be construed and held as a pledge.

" In determining this question, the intention of the parties must be considered. Written articles of co-partnership may be so expressive as to leave no room for doubt. So far as these articles of agreement are concerned, we discover nothing in them evidencing an intention to form a partnership." Smith v. Knight, 71 Ill. 150; Butler v. Merrick, 24 Ill. App. 628.

The parties to the instrument having treated it as importing a purpose different from a partnership, the law will not allow it to be construed as meaning a partnership. Lunn v. Gage, 37 Ill. 19; Garrison v. Nute, 87 Ill. 215; Church v. Brose, 104 Ill. 206; People v. Murphy, 119 Ill. 159.

Whatever puts a party upon inquiry, amounts, in judgment of law, to notice of all facts which might be learned by due and diligent prosecution of the inquiry. Ins. Co. v. Ford, 89 Ill. 252; Lumbard v. Abbey, 73 Ill. 178; R. R. Co. v. Kennedy, 70 Ill. 250; Shepardson v. Stevens, 71 Ill. 646; Russell v. Ranson, 76 Ill. 167.

It is denied that the division of the profits and losses of a business between the parties to it necessarily constitutes them partners. Again, such division is incident to the joint

adventures of tenants in common as well as to the adventures of persons as partners. Niehoff v. Dudley, 40 Ill. 406; Dwinel v. Stone, 30 Me. 384; Donnell v. Harshe, 67 Mo. 170; Rice v. Austin, 17 Mass. 197; McGregor v. Parsons, 41 Ill. App. 571; Donnan v. Gross, 3 Brad. 409; Smith v. Knight, 71 Ill. 148; Parker v. Fergus, 43 Ill. 437; Hefner v. Palmer, 67 Ill. 161, Am. & Eng. Enc., Vol. 17, p. 882.

"A contract for partnership, perhaps more than any other, must be entered into deliberately, understandingly, fairly, and without deception, or undue or wrongful influence." Hynes v. Stewart, 10 B. Mon. (Ky.) 429; Howell v. Harvey, 5 Ark. 270; Fogg v. Johnston, 27 Ala. 432; Parsons on Part., 13.

This suit is against appellant as surviving *partner*, etc., and a recovery can only be had upon and according to the allegation. Tenants in common, though acting jointly with respect to the subject-matter of ownership, are not partners, and proof of such joint action is not sufficient to establish a partnership, or to sustain this action. Dwinel v. Stone, 30 Me. 384.

A joint interest and enterprise do not necessarily constitute a partnership. Morton v. Gateley, 1 Scam. 211; Blue v. Leathers, 15 Ill. 31.

Finally, it is insisted, in view of all the facts in evidence leading to, attending and following the execution of the instrument, that it is absolutely void for fraud. Kenner v. Harding, 85 Ill. 264; Witherwax v. Riddle, 121 Ill. 140.

J. A. McClernand and Gross & Broadwell, attorneys for appellee.

Opinion of the Court, the *Hon. George W. Wall, Judge.*

Appellant brought suit against the appellee, as the surviving partner of Speed Butler, deceased. The written agreement between the parties, which appellant insisted created a partnership, was before us in the case of Butler v. Merrick, 24 Ill. App. 628.

We there held that as between the parties to it the in-

strument did not create a partnership, and that there was nothing in the facts to justify the conclusion that third persons might treat them as partners. In that case, the plaintiff did not know of the existence of this writing.

In this case, the plaintiff did know of it, and reaching the conclusion that it sustained the statement previously made by Speed Butler, that the appellee was his partner, advanced money on the note in evidence, signed Speed Butler & Co.

We have carefully read the very able and ingenious argumet of counsel for the bank, urging us to reconsider the conclusion reached in the Merrick case.

After a thorough re-examination, we are entirely satisfied with that conclusion, and we see no occasion to recede from it. The question now is, whether the appellee can be held as a partner by the bank, on the facts as disclosed in this case. The same proof is here that was in the Merrick case, as to the manner of the execution of the instrument, the object of it as understood by appellee, and her misunderstanding as to its contents. It appears that Speed Butler kept his account with the appellant bank, and desiring to borrow money there, represented to the cashier that the appellee was his partner in the business, that the agreement was recorded, and the cashier, while the matter was under consideration, took occasion to examine the record, thus ascertaining the terms of the agreement.

Was he justified in the conclusion that it created a partnership?

The primary object of the agreement was to transfer a one-fourth interest in certain coal mining property from Speed Butler, as trustee, to the appellee, as trustee, for the stated price of $13,000, subject to certain conditions and limitations, among which were, that a royalty of one quarter of a cent per bushel on all coal taken from the mines was to be paid to Speed Butler, who was to have the "entire management and control of all matters in connection with the mine," and in case of his death, his executors, administrators or trustees were to have the same authority; that he should have the right to buy back the interest sold at whatever price

might be offered by any *bona fide* purchaser, and that no sale should be made by appellee to any party that might be objectionable to him, and that he would watch and protect the interest of appellee, in the same manner as though it belonged to himself. It was also provided, that at the end of each month, a full and satisfactory statement should be made, and the profits and losses shared in proportion to the interests, one-fourth to appellee, and three-fourths for Speed Butler.

It is this provision for sharing losses and profits that is relied upon as establishing the partnership relation. This is often spoken of in the books as an important, if not a controlling test, but it is not infallible. There are certain qualifications. In the case of Fougner v. First Nat. Bank, 141 Ill. 124, cited by counsel for appellant, the court, speaking of this test, remarks as follows:

" That, however, is subject to the qualification that it must be a sharing in the profits as distinguished from merely making the profits the measure of compensation for services, or for the use of property or money in the business.

" The test of receiving profits is also subject to the further qualification that there must not only be a sharing in the profits, but it must be done as a principal and not merely as an employe, or as interest on a loan of money, or for the use of property. This last qualification is founded on the case of Cox v. Hickman, 8 H. L. 268.

" In Holman v. Hammond, L. R. 7 Exch. 218, it is said the import of opinions delivered in the House of Lords in that case is correctly summarized by O'Brien, J., in Shaw v. Galt, 16 C. L. 375, thus: The principle to be collected from them appears to be that a partnership existing even as to third parties is not constituted by the mere fact of two or more persons participating or being interested in the net profits of a business, but that the existence of such partnership implies also the existence of such a relation between such persons as that each of them is a principal and each an agent of the other."

Then follows a quotation to the same effect from the opin-

ion of Lord Cranworth, in Cox v. Hickman, in which he says: " But the real ground of liability is that the trade had been carried on by persons acting in his behalf. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The correct mode of stating the proposition is to say that the same thing which entitles him to the one makes him liable to the other, namely, the fact that the trade has been carried on in his behalf; *i. e.*, that he stood in the relation of principal toward the persons acting ostensibly as traders, by whom the liabilities have been incurred and under whose management the profits have been made." The court add :

" In the application of this rule many decisions are to be found by courts of last resort in this country, to the effect that, notwithstanding a party may contract to receive a part of the profits of a business, he can not be held liable as a partner. On the other hand, many others—sometimes by the same courts—hold the contrary. These cases are all reconcilable on the distinction that in the first class of cases there was a mere hiring of services, property or money to be paid for out of the profits of the business in which it was engaged, while in the latter there was a proprietary interest in the business. In other words the distinction drawn by Judge O'Brien, *supra*, will, as a rule, sufficiently harmonize all the cases to which our attention has been called."

Reference is then made approvingly to Smith v. Knight, 71 Ill. 148, based on former decisions, holding that no partnership was created by a contract to receive a part of the profits of a business for the use of money advanced to enable the firm to which it was furnished to carry on its business, and then it is said that the circumstances which most clearly distinguished the agreement in the case then in hand from those which had been held to create only the relation of employer and employe, debtor and creditor, or the mere hiring of property to be used in business, was the clause giving Ferguson (whose denial of the partnership relation raised the issue in the case), " general charge of the office, finances, books, correspondence, accounts, sales, or other matters

connected with the business." Other expressions in the agreement are referred to as tending to support the partnership theory.

We have quoted thus from this opinion because it seems to be greatly relied on by appellant as sustaining the contention that the agreement now under consideration, *ex vi termini*, created a partnership.

As it is above expressed, the existence of a partnership implies such a relation between the persons as that each of them is a principal and each an agent for the other. In the present case a casual reading of the agreement would show that there was no such relation intended between these parties.

First, they are described as trustees, which negatives the idea; next, the entire management is to be in the hands of one of the parties, to the exclusion of the other, who can not interfere in any way, or dispose of any of the supposed partnership effects; and still further, this management is to pass, in case of death, to his personal representatives, which also negatives a central doctrine of the law of partnership.

Further, the agreement gives him a right to buy back, in preference to any other purchaser, and he stipulated to care for the interest as his own.

Still further, there is no provision requiring appellee to furnish money to carry on the business.

It was impossible to conduct the operations in view without considerable capital. This agreement relates only to the mining property which could not be utilized without money to pay for labor, supplies, freights, etc.

Another significant fact was, that Mr. Butler was to receive a royalty of one-fourth of a cent per bushel on all coal taken from the mine; not on three-fourths merely, but on all; "to be paid before anything else is to be paid, from the proceeds of the mine."

Trained business men, as these bank officers no doubt were, would hardly be justified in supposing that by this agreement the appellee intended to make Speed Butler her agent, and to authorize him to pledge her credit to any extent the business of mining and selling coal might require.

A very natural suggestion would have been that some purpose other than that of a partnership, was in the minds of the parties, and the question would have been what that purpose was. Was it not probably to secure the appellee for money advanced by her and which Speed Butler needed to carry on the business?

To say the very least, a cautious man would have felt that here was a most unusual state of things for a partner. ship, involving very unequal conditions and hazards for the parties; that it was doubtful whether such was the intention, and that prudence required further investigation. The appellee was well known to the president and cashier and resided but a few blocks from the bank. They saw her frequently and might easily have made inquiry of her as to her understanding of the matter. If the contract was free and clear from all doubt and if it plainly made the signers partners, such inquiry would of course have been unnecessary.

We can not so regard it, and are of the opinion that when attentively considered it fairly excludes the idea of partnership in the legal sense.

But if it is merely ambiguous and uncertain then the bank was put upon inquiry and must be charged with knowledge of all the facts such inquiry would have developed.

The case was tried by the court, a jury being waived, and it is suggested in the brief of appellant that certain propositions of law asked on behalf of appellant should have been held. No argument is presented in support of the suggestion and we would therefore be justified in declining to examine the propositions. The first asserts that the contract was duly executed. This, as between the parties thereto, would depend on whether the appellee understood the contents and import of the instrument and understandingly signed it, which involves a question of fact, and assumes a certain conclusion to be drawn from the proof.

The second assumes that the parties were *to jointly operate the mines*, and the third, that Speed Butler was to manage the business for himself and *for the appellee*, which, though

true in a certain sense, was not necessarily so, as we have attempted to show, in the only sense that is important to support the appellant's theory, that is, the sense of a partnership.

The fourth and fifth clauses assume that by the terms of the instrument a partnership was created, or if they do not so assume they are without force or point.

It is not suggested that the court erred in holding propositions of law asked on behalf of the appellee.

We are of opinion that the judgment is in accordance with the merits of the controversy and that it should be affirmed.