Dan Serafine *et al.*, Plaintiffs, *v.* The Metropolitan Sanitary District of Greater Chicago, Defendant and Third-Party Plaintiff-Appellant —(Santucci Construction Co. *et al.*, Third-Party Defendants-Appellees.)

(No. 52901; 

First District—May 13, 1971.

94

Allen S. Lavin and Sidney B. Baker, both of Chicago, for appellant.

John F. O'Meara and Thomas W. Dempsey, both of Lord, Bissell & Brook, of Chicago, for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Dan Serafine and the Exchange National Bank, as trustee of certain land for the benefit of Serafine, brought suit against The Metropolitan Sanitary District of Greater Chicago, hereinafter referred to as District, for damages arising out of a trespass to the land. The trespass had occurred when a sewer was built on the property without an easement having been obtained. A judgment in the amount of $53,000, not in issue on this appeal, was entered against the District and in favor of Serafine, and the judgment was satisfied by the District. The District filed a third-party complaint against Santucci Construction Company, a corporation, as principal and its surety, Aetna Casualty and Surety Company, hereinafter referred to as defendants, claiming that they had a duty to indemnify the District for damages recovered by Serafine. A motion for judgment on the pleadings was filed by the District, and a motion for summary judgment was requested by defendants. The court denied the District's motion, but granted summary judgment in favor of defendants. The District appeals, contending that judgment should have been entered in its favor; and that since there was a material issue of fact, summary judgment should not have been granted in favor of defendants.

On March 7, 1958, the District entered into a contract with Santucci for the construction of a sewer system in Mount Prospect, Illinois. On March 13, 1958, defendants executed a Contractor's Bond. The sewer work was completed in November 1958.

Serafine purchased the property on February 26, 1959, and began construction of a building in April 1959. In his complaint, Serafine charged that the District had not obtained an easement for the installation of a sewer, and was trespassing on his property. He also charged that as a result of the trespass, the earth around the sewer was weakened and the building collapsed. The District in its amended third-party com-

plaint against defendants charged that the District had been sued by Serafine for damages resulting from execution of work performed in the construction of the sewer. The District also charged that under the bond executed by defendants, they were liable for the judgment paid to Serafine.

In their answer, defendants denied that the damages to Serafine resulted from the work performed in the construction of the sewer, but stated that the damages resulted from the failure of the District to obtain the necessary easement and from its failure to notify Santucci that no easement was obtained. Defendants also denied that they had any duty to indemnify the District for the judgment paid to Serafine.

The District filed a motion for judgment on the pleadings, and in support of that motion, stipulated that it did not have an easement to install the sewer on the land in question. The District also stipulated, for the purpose of its motion only, that Santucci had no notice of the lack of easements.

In support of their motion for summary judgment, defendants filed an affidavit stating that the terms of the contract between the parties required the District to obtain all necessary easements and permits. The affidavit went on to say that the District, in its sworn answer to interrogatories, admitted that it had the obligation to obtain the necessary easements, and had failed to do so. The affidavit also recited that the District in its answer to interrogatories had also admitted that Santucci built the sewer according to specifications.

We believe that proper procedure requires us to consider first the District's argument that summary judgment was improperly granted in favor of defendants since there were several genuine issues as to material facts. The District argues in this court that there were questions of fact as to whether Santucci performed the work in good and workmanlike manner, whether there was a faulty construction of the sewer, and whether Santucci had notice that no easement had been obtained. In connection with Santucci's lack of notice, the District notes that its stipulation as to that point was made only for the purposes of its own motion for judgment.

An examination of the record reveals that there is no merit to the District's contention that there are genuine issues as to material facts remaining in the instant case. At the hearing on the respective motions for judgment, the trial judge questioned trial counsel for the District on this point. Counsel stated unequivocally that there were no questions of fact, and that the stipulation filed in behalf of its motion for judgment on the pleadings would also stand for the purpose of defendants' motion for summary judgment. Counsel for the District also stated that Santucci

violated no provision of the contract except that it placed a sewer on land where the District had obtained no easement. Moreover, the District, in sworn answers to interrogatories, conceded that it had the responsibility of obtaining the necessary easements, and had not done so. It also conceded in answer to an interrogatory that Santucci had done its work according to specifications. The trial court did not err in finding that there were no genuine issues of material fact in the instant cause.

The District next contends that the trial court erred in refusing to enter judgment on the pleadings in its favor. It argues that defendants are absolutely liable for losses arising from the performance or execution of the contract, and also argues that the loss which gave rise to this litigation arose from the performance or execution of the contract. Defendants maintain that the damages did not arise from the performance or execution of the contract, but rather from the District's failure to obtain an easement.

The contract between the parties recited as follows:

"All of the covenants, terms and stipulations in these Contract Documents form the Contract and are hereby made a part thereof."

The contract documents, as enumerated in the contract, included the performance bond. The contract provided for the liability of Santucci, and stated as follows:

"The Contractor covenants and agrees that he shall be solely responsible for and will pay all damages for injury to real or personal property, or for any injury or death occurring on account of and during the performance of the work hereunder, and he hereby agrees to indemnify and save the Sanitary District harmless against all suits and actions of every name and description brought against the Sanitary District, for, or on account of any such injuries to real or personal property, or injuries received or death sustained by any person or persons, caused by said Contractor, his servants, agents or employees, in the execution of said work; or by or in consequence of any negligence in guarding the same; or by or on account of any omission or act of the Contractor, his agent or employees; whether such injuries be attributable to the negligence of the Contractor or his employee or otherwise; and the said Contractor further agrees that so much of the money due him under and by virtue of this contract as shall be considered necessary by the Board of Trustees of the Sanitary District may be retained by the Sanitary District to protect itself against loss until such suit or claim for damages shall have

been settled, and evidence to that effect shall have been furnished to the satisfaction of the said Board of Trustees.

The Contractor expressly admits and covenants to and with the Sanitary District that the plans and specifications and other provisions of this contract, if the work be done without fault or negligence on the part of the Contractor, do not involve any danger to the structures of the Sanitary District or to any property or structures adjacent to or in the vicinity of the work. The liability of the Contractor under this covenant is absolute and is not dependent upon any question of negligence on his part, or on the part of his agents, servants or employees and the neglect or omission of the Engineer to direct the Contractor to take any particular precautions or to refrain from doing any particular thing, shall not excuse the Contractor in case of any such damage."

Other conditions of the contract provide as follows:

"All of the permanent structures to be constructed under this contract are located within the limits of public streets and highways and in right-of-way on private property which, if now acquired, will have been acquired by the Sanitary District prior to the date of commencement of construction.

In case the Sanitary District fails to acquire any part of the right-of-way included within the limits of the work specified under this contract, as shown on the accompanying plans, on or before sixty (60) days after the approval of the bond of the Contractor, and if, in the opinion of the Engineer, such failure to acquire such part constitutes or causes a delay in the commencement or prosecution of all or any part of the work under this contract, then the time of completion of the work to be performed under this contract shall be extended for such period of time as the Engineer may determine that the work under contract has been delayed by such failure to acquire the same, and such extension of time shall begin at the time of completion as specified in Article 23 hereof. If such unacquired right-of-way is not acquired within nine (9) months after the approval of said bond, then this contract, insofar as it relates to work to be performed within the property where said right-of-way is unacquired, shall be null and void at the option of either party hereto, and the Sanitary District shall claim no damages against the Contractor for not performing any work on right-of-way which is unacquired, nor shall the Sanitary District be responsible for or pay any damages to the Contractor by reason of interference with his work due to the fact that all of

said right-of-way has not been acquired, nor on account of antici-
pated profits on work of any kind not performed.

The Contractor will not be allowed to construct the work on
private property until the easement has been obtained or approval
given by the owner to enter upon the property."

The performance bond provided as follows:

"The liability of the Principal and the Surety under this covenant
is absolute and is not dependent upon any question of negligence
on the part of the Principal, or on the part of his agents, em-
ployees or workmen, and the neglect or omission of the Engineer
[of the District] to direct the Principal, or its agents, employees
or workmen, to take any particular thing, shall not excuse the
Principal or the Surety in case of any such damage.

"And It Is Hereby Further Expressly Understood and Agreed, and
made a condition hereof, that any judgment rendered against
The Metropolitan Sanitary District of Greater Chicago, as afore-
said, in any suits for damages for injury to real or personal prop-
erty, or for any injury sustained by any person resulting from
the performance of the work under this contract by said Santucci
Construction Company or its agents, employees or workmen in the
premises, and also that any judgment of any court or award of
any Board of Arbitrators or of the State Industrial Board of the
State of Illinois rendered against said The Metropolitan Sanitary
District of Greater Chicago in any suit or claim arising under said
Workman's Occupational Disease Act and Workman's Compen-
sation Acts of the State of Illinois, now in force, relating to com-
pensation for occupational diseases, accidental injuries or death
suffered by his employees or the employees of any subcontractor
or subcontractors in the course of their employment, when notice
of the pendency of such suit, hearing or arbitration shall have
been given said Santucci Construction Company shall be con-
clusive against each and all parties to this obligation as to amount,
liability and all other things, pertaining thereto."

■■■ The District maintains that not only did the trial court err in
entering summary judgment in favor of defendants, but also that it
erred in not entering judgment in favor of the District. In making this
argument, the District refers primarily to the language of the perform-
ance bond. However it is elementary that a contract must be construed
as a whole, and each part of an instrument be viewed in the light of the
others. *Chicago Home for Girls v. Carr*, 300 Ill. 478, 133 N.E. 344 (1921).
Guidelines for giving judicial effect to an agreement of contracting

parties were set forth in *Herlihy Mid-Continent Co. v. Sanitary District*, 390 Ill. 10, 60 N.E.2d 882 (1945), where the court stated at p. 166:

> "In construing a contract, the primary object is to ascertain the intention of the parties. (Decatur Lumber & Mfg. Co. v. Crail, 350 Ill. 319). That intention must be determined from the language in the contract. If the intention may be ascertained from the wording of the contract, rules of construction have no application. (Domeyer v. O'Connell, 364 Ill. 467). No words can be added to or taken from a contract and thereby change the plain meaning of the parties as expressed therein. (Stevens v. Felman, 338 Ill. 391). Nor may the courts engage in surmises as to what the parties intended but which they failed to express."

Also see *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 247 N.E.2d 886 (1969).

■■ The District maintains that the broad language of the performance bond entitles it to recover for the judgment arising out of the damages to Serafine's property. However, we believe that the performance bond executed by both defendants and the contract executed by Santucci must be considered as part of the same transaction. This is indicated by the recital in the bond that Santucci must do the work as "specified in the attached contract documents." As we have noted, the contract between the District and defendant Santucci provided that the latter would be responsible for and pay all damages for injuries to persons and property *"occurring on account of and during the performance of the work hereunder."* [Emphasis added]. We find that the damages which gave rise to Serafine's lawsuit against the District grew out of the District's original undertaking of the project and its admitted failure to obtain the easement rather than from any performance of the work by Santucci. An adoption of the District's theory would create unreasonable results. The unreasonableness of the District's interpretation can be demonstrated in its general application. If the District had breached its contract with Santucci by failing to pay the latter for the work performed, the construction urged by the District would have us require Santucci and its surety to indemnify the District for its failure to pay Santucci. As was stated by Justice Cardozo:

> "The problem before us is not one of philosophy * * * General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. (Bird v. St. Paul Fire & Marine Insurance Co., 224 N.Y. 47, 120 N.E. 86

100

(1918) ), quoted with approval in L. Green, Rationale of Proximate Cause, Problem of Contract Liability, Vernon Law Book (1927) p. 46."

The District was not entitled to indemnity for a loss caused by its own failure to obtain easements.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.