ESTATE OF THOMAS McKAY, Plaintiff-Appellant, *v.* WALTER H. MOSES *et al.*, Defendants-Appellees.

First District (2nd Division) No. 60469

Opinion filed January 20, 1976.

Wildman, Harrold, Allen & Dixon, of Chicago (Max Wildman, John M. Lison, and John J. Arado, of counsel), for appellant.

William Bruce Hoff, Jr., of Chicago (Mayer, Brown & Platt, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Thomas McKay[1] (plaintiff) filed a complaint for an accounting to collect monies allegedly owed him upon the termination of his association with the law partnership of Moses,[2] McGarr, Gibbons, Abramson & Fox (defendants). Both plaintiff and defendants moved for partial summary judgments. The circuit court of Cook County granted defendants' motion and entered an order limiting plaintiff's partnership termination rights to those specified in paragraphs 5(d) and 12(b) of a partnership agreement entered into by these parties. Plaintiff's motion was denied. The correctness of the trial court's ruling is challenged by the plaintiff in this appeal.

This court initially held that the trial court was in error in granting defendants' motion for summary judgment. Our conclusion was grounded on the finding that the partnership agreement was uncertain and am-

---

[1] Thomas McKay died and his estate was substituted as the plaintiff in this case on June 13, 1972.

[2] The estate of Walter H. Moses was substituted for Walter H. Moses on November 19, 1973.

biguous, consequently a genuine issue of material fact had to be determined and evidence should be submitted to give the trier of fact a basis for its decision. Thereafter the defendants filed a petition for rehearing in which it was asserted that both parties agreed "[n]either plaintiff nor defendants has any such extrinsic evidence to offer." The petition for rehearing was granted, whereupon the plaintiff filed an answer to said petition. In effect, the parties in an effort to resolve this prolonged litigation, jointly requested this court to consider the record in this case and resolve the substantive issues presented by the appeal. Subsequently, at the suggestion[3] of this court, the parties filed the following stipulation:

> "1. That, in resolving the substantive issues presented, this Court may consider the parties' answers to the Bill of Particulars and Interrogatories, documents produced and plaintiff's depositions heretofore filed with the Court; and
>
> 2. That the parties agree that the Court should resolve the substantive issues raised by the respective parties in this litigation."

We have therefore withdrawn our original opinion and substitute this opinion which considers the substantive issues presented by the parties. The following is a summary of the pertinent facts determined from the pleadings, answers to bill of particulars and interrogatories, as well as the plaintiff's discovery deposition, all filed with this court.

On June 1, 1965, after plaintiff and some of the defendants had been associated for a number of years in the practice of law, a modified detailed partnership agreement was entered into by the parties. The portions of that agreement relevant to this appeal are paragraphs 5(d), 9(a), 12(a) and (b), and 16.[4] Paragraph 5(d) sets forth a partner's rights upon the *death* or *withdrawal* from the partnership; paragraph 9 deals with the partners' rights upon *termination* of the partnership; paragraphs 12(a) and (b) allow for the *expulsion* of a partner giving the expelled partner the same rights as a withdrawing partner under paragraph 5(d); and paragraph 16 requires a vote of 66⅔% interest of the partnership for a *dissolution*. This agreement provided it " * * * shall continue to and including May 31, 1966 (except as to such parties

---

[3] The 1970 Illinois Constitution, article VI, section 6 provides: "[t]he Appellate Court may exercise original jurisdiction when necessary to the complete determination of any case on review."

[4] The partnership agreement consists of 23 pages. We refer to only so much of the agreement as is pertinent to our resolution of this appeal.

hereto as shall become deceased or whose interests shall cease as herein provided), unless the parties hereto, or the survivors or remainder of them, shall in writing agree to continue said partnership thereafter."

Upon the expiration of this partnership agreement on June 1, 1966, the partners signed an extension and revision of the existing agreement. The percentage interest of the partners was revised by this extension and the duration of the agreement was extended. Paragraph two of the extension and revision provided as follows:

> "The term of said agreement dated June 1, 1965 shall be extended for one year to and including May 31, 1967, and from fiscal year to fiscal year thereafter, *subject to the right of any partner to terminate pursuant to said agreement.*" (Emphasis supplied.)

On April 26, 1967, plaintiff served notice on defendants that he intended to terminate his association with the partnership pursuant to paragraph two of the extension and revision, and that the termination would be effective as of May 31, 1967. On that same date, April 26, 1967, defendants served a demand and notice on plaintiff pursuant to paragraph 12(a) of the partnership agreement requiring that plaintiff withdraw from the partnership or be expelled as of Friday, April 28, 1967.

Plaintiff contends he is entitled to an accounting of the partnership assets as if the partnership was terminated under paragraph 9 of the agreement. This would entitle him to collect, amongst other things, unbilled as well as billed but uncollected hours earned by the partnership as of May 31, 1967.

Defendants contend plaintiff is not entitled to an accounting under paragraph 9; but rather, he is restricted to the provisions of paragraph 5(d)—the rights of a withdrawing partner. Defendants urge the word "terminate" as used in the extension and revision is no more than a withdrawing from the partnership, and the plaintiff should not be able to dissolve the partnership without a 66⅔% vote for dissolution. In the alternative, defendants contend plaintiff is an expelled partner and thereby limited to the rights specified in paragraphs 12 and 5(d) of the partnership agreement. Under paragraph 5(d)—which defendants contend is applicable—plaintiff is only entitled to his proportionate share of the collected assets of the partnership on the date of his termination, and would not be entitled to unbilled or billed and uncollected time.

Plaintiff filed suit to collect the amounts allegedly owed to him by

the partnership under his theory. Defendants answered by denying plaintiff's right to terminate and pleaded plaintiff's alleged misconduct as a partner resulting in expulsion pursuant to paragraph 12(a), and demanded an accounting for all sums due and owing to defendants. Defendants moved for summary judgment to determine whether under the partnership agreement between the parties and its supplement, or under the Illinois Partnership Act, plaintiff would be entitled " * * * to any rights as a 'withdrawing', 'expelled' or 'terminating' partner over and above those provided in paragraphs 5(d) and 12(b) of the Partnership Agreement." In response, plaintiff moved for summary judgment requesting the trial court to hold that plaintiff is entitled to his proportionate share of unbilled time, billed but uncollected time, and fixed firm assets as of May 31, 1967.

The circuit court of Cook County denied plaintiff's motion and granted defendants' motion for partial summary judgment, limiting plaintiff's rights upon termination to those specified in paragraphs 5(d) and 12(b) of the partnership agreement.

Our review of the record before us leads us to conclude that there is no evidence before us which aids in determining what the intent of the parties is with respect to the disputed paragraph two of the extension and revision dated June 1, 1966. In the discovery deposition taken of the now deceased plaintiff, he stated that prior to the dispute he had not read the partnership agreement, and had no intention of using technical words in his personal discussions with his partners.

## I.

As previously noted, plaintiff originally challenged the propriety of the partial summary judgment entered by the circuit court of Cook County.

The summary judgment procedure has become a material part of the present pleading and practice in Illinois, and is a sizeable step in disposing of cases with more dispatch than formerly was available. (*Klesath v. Barber* (3rd Dist. 1972), 4 Ill.App.3d 86, 88, 280 N.E.2d 283.) The Illinois Civil Practice Act, section 57(3) (Ill. Rev. Stat. 1973, ch. 110, par. 57(3)) provides:

> "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."

▓▓▓ In considering a motion for summary judgment, the court considers the entire record, and such a judgment should only be granted where it is clear there is no genuine issue of material fact. See *Williams v. Chicago & Eastern Illinois R.R. Co.* (5th Dist. 1973), 13 Ill.App.3d 596, 600, 300 N.E.2d 766; *Roberts v. Dahl* (1st Dist. 1972), 6 Ill.App.3d 395, 405, 286 N.E.2d 51.

We originally held that because the word *terminate* in the June 1, 1966, extension of the partnership agreement created an ambiguity, extrinsic evidence should be introduced to explain the intent and true meaning of the parties, and the trial court was in error in granting the defendants' motion for summary judgment. However, as we have noted above, based on the stipulation of the parties, we are now passing this issue without resolution.

## II.

We now consider whether the trial court was correct when it limited plaintiff's partnership termination rights to those specified in paragraphs 5(d) and 12(b) of the partnership agreement. Or to say it another way, we must now decide whether plaintiff's action on April 26, 1967, amounted to a termination of, or a withdrawal from the partnership.

▓▓ A few basic principles should be stated. Partners have the right to establish between themselves, by a partnership agreement or by a dissolution agreement, their rights, duties and obligations so far as the partnership is concerned. (*Meyer v. Sharp* (4th Dist. 1950), 341 Ill. App. 431, 443-44, 94 N.E.2d 510.) Where there is a partnership agreement, it is well settled that a court must construe it as any other contract so as to determine the intent of the parties. (*Niehoff v. Dudley* (1866), 40 Ill. 406, 408; *Willman v. Beheler* (Mo. 1973), 499 S.W.2d 770, 775; 59 Am.Jur.2d *Partnership* § 37 (1971).) The intent should be determined from the language of the entire agreement, and each part of the contract must be viewed in light of the others. *Serafine v. Metropolitan Sanitary District* (1st Dist. 1971), 133 Ill.App.2d 93, 98-99, 272 N.E.2d 716.

While both plaintiff and defendants in the case at bar readily admit the truth of the partnership agreement and its extension and revision, they differ as to the meaning and effect to be given the terms of those agreements, specifically the meaning of the word "terminate" as used in paragraph two of the extension and revision of the partnership agreement.

Plaintiff contends the word "terminate" as used in that part of the agreement gives every partner the right to cause a dissolution as of

the end of the stated term on May 31, 1967, a winding up of the partnership business pursuant to paragraph 9 of the agreement. Plaintiff explains the partnership business may continue, if the other partners so desire, but he is entitled to an accounting as set forth in paragraph 9 which would entitle him to his proportionate share of the unbilled and uncollected but earned hours of the partnership on the date of his termination. In the alternative plaintiff contends: (1) the Illinois Partnership Act requires a dissolution and termination of the partnership at the express will of any partner since the partnership was for no definite period of time (see Ill. Rev. Stat. 1973, ch. 106½, par. 31);[5] and (2) that equity demands plaintiff share in the unbilled and billed but uncollected hours earned by the partnership prior to his termination.

Defendants contend neither the Partnership Act nor equity controls (see *Devlin v. Rockey* (7th Cir. 1961), 295 F.2d 266; *Adams v. Jarvis* (1964), 23 Wis. 2d 453, 127 N.W.2d 400); and that considering the partnership agreement in its entirety, it is clear that the parties merely intended, in paragraph two of the extension and revision of the agreement, to give a partner a right to withdraw despite the use of the word "terminate." Defendants cite various uses of the word "terminate" throughout the partnership agreement. They point to the absence of a more detailed explanation of the process for a partner to terminate, when all other changes in partnership association are carefully explained in the agreement, to support their theory that "terminate" in the extension and revision merely means withdraw and is controlled by paragraph 5(d). In the alternative defendants contend plaintiff was expelled pursuant to the agreement when he failed to withdraw after receiving the notice and demand served on him by the other partners pursuant to paragraph 12(a). This theory would also limit plaintiff's rights to those set out in paragraph 5(d) of the partnership agreement.

As stated in *Englestein v. Mackie* (1st Dist. 1962), 35 Ill.App.2d 276, 288-89, 182 N.E.2d 351, the word "termination" has a definite meaning as used in the Partnership Act:

> "The terms 'dissolution' and 'termination,' as employed in the Partnership Act are not synonymous and, as used, have different meanings. Dissolution does not terminate the partnership and

---

[5] Section 31 of the Illinois Partnership Act (Ill. Rev. Stat. 1973, ch. 106½, par. 31) reads in pertinent part:

"§ 31. When dissolution is caused
Dissolution is caused:
(1) Without violation of the agreement between the partners,
* * *
(b) By the express will of any partner when no definite term or particular undertaking is specified, * * *."

does not end completely the authority of the partners. The order of events is: (1) dissolution; (2) winding up; and (3) termination. Termination extinguishes their authority. It is the ultimate result of the winding up and occurs at the conclusion of the wind up."

The word "terminate" is defined in Black's Law Dictionary 1641 (4th rev. ed. 1968) as "[t]o put an end to; to make to cease; to end." (See *Towne v. Towne* (1945), 117 Mont. 453, 159 P.2d 352, 357.) Webster's Third New International Dictionary (1971) defines "terminate" as "to bring to an ending or cessation in time, sequence or continuity ⁕ ⁕ ⁕ to end formally and definitely (as a pact, agreement, contract)." In *Willman v. Beheler* (Mo. 1973), 499 S.W.2d 770, 775, it is noted that "[i]n common parlance 'termination' is sometimes used to indicate a change in the status of a partnership when 'dissolution' would be legally correct."

■■ The Illinois Partnership Act is based on the Uniform Partnership Act. The authors of the Uniform Partnership Act suggest: " 'Dissolution' designates that point in time when the partners cease to carry on the business together; 'termination' is the point in time when all the partnership affairs are wound up; and 'winding up' (often called 'liquidation') is the process of settling partnership affairs after dissolution. [Citation.]" 60 Am.Jur.2d *Partnership* § 171 (1972).

■■ As illustrated by the briefs and arguments of counsel and the definitions of the term "terminate," there is an ambiguity as to what the parties intended when they used this word in the June 1, 1966, extension of their partnership agreement. When the parties do not state their intentions clearly in a partnership agreement causing an ambiguity to exist, extrinsic evidence should be introduced to explain the intent and true meaning of the parties. A determination of what the parties meant when a contract is susceptible to various interpretations is a question of fact. See 12 Ill. L. & Pr. *Contracts* § 247 (1955).

Unfortunately neither the deposition of the plaintiff or any of the other papers filed in this record provide any assistance in determining the intent of the partners. The partners now ask this court to analyze the partnership agreement together with the extension and revision in order to determine what the partners intended. In doing so we look to the entire contract and the language used, and also consider the object, purpose and nature of the agreement. The June 1, 1965, partnership agreement, amongst other things, recognized that the partnership could be affected by the death, withdrawal or expulsion of a partner and set forth the rights of the partners should any of the aforesaid events take place. In a separate paragraph (9) the partners set forth detailed

provisions "upon termination of this partnership." A reading of the termination paragraph, in our opinion, clearly suggests that the partners intended this paragraph only to apply when, for whatever reasons, the partners decide to no longer continue the existing partnership and elect to wind up the affairs of the partnership. In other words, paragraph 9 provided for the "winding up" of the affairs of the partnership after dissolution.

But the June 1, 1965, agreement provided for only a one-year term. Thus on June 1, 1966, being desirous of extending the June 1, 1965, agreement, the partners agreed to its extension, and at the same time adopted certain revisions to the 1965 agreement. Amongst other things, the partners provided:

"2. The term of said agreement dated June 1, 1965 shall be extended for one year to and including May 31, 1967; and from fiscal year to fiscal year thereafter, subject to the right of any partner to terminate pursuant to said agreement."

It is this language which created the present controversy.

■■ A reading of plaintiff's deposition clearly suggests there was a growing tension between McKay and other, but not all, partners. As a consequence, plaintiff had discussed with some partners his leaving the partnership and then served notice on the other partners of his intent to terminate his association with the partnership at the end of the then current term. This, plaintiff had a perfect right to do. However, in our opinion, it is equally clear that McKay knew and contemplated the remaining partners would continue the partnership business just as if a death or withdrawal of a partner had occurred as contemplated in paragraph 5(d) of the 1965 agreement. Although the language of paragraph 2 of the 1966 agreement is not artfully drawn and invites the interpretation suggested by the plaintiff, in our opinion plaintiff failed to establish that the partners intended that language to mean anything more than a voluntary withdrawal from the partnership. (*Cf. Willman v. Beheler* (Mo. 1973), 499 S.W.2d 770, 775). Plaintiff had the burden of proving his complaint, and in our opinion, he failed to do so.

Plaintiff's action caused a change in the relationship of the partners arising by virtue of the partnership agreement. (68 C.J.S. *Partnership* § 330 (1950); Ill. Rev. Stat. 1971, ch. 106½, par. 29.) The partnership then in effect was thus dissolved—not terminated—thereby necessitating the remaining partners to account to plaintiff for his interest as provided in paragraph 5(d). (See *Karrick v. Hannaman* (1897), 168 U.S. 328, 335, 42 L.Ed. 484, 18 S.Ct. 135.) Although we recognize the word

"terminate" was used in the 1966 agreement, in our opinion, the partners were actually referring to a withdrawal of a partner. Paragraph 5(d) of the 1965 agreement provided for the accounting between the partners upon the withdrawal of a partner. The plaintiff by his withdrawal on May 31, 1967, is limited to the accounting provided in paragraph 5(d).

■■ Plaintiff also contends that notwithstanding the interpretation we place on the language used, under general equitable principles he was entitled to his proportionate percentage of all partnership assets as a withdrawing partner. The simple answer to that is partner McKay voluntarily entered into a partnership agreement wherein the partners between themselves agreed upon their rights and liabilities should one of the partners withdraw or leave the partnership. There is nothing in the record to suggest the need to apply equitable principles in the interpretation of the partnership agreement.

Therefore, in our opinion, the trial court was correct when he entered an order limiting plaintiff's partnership termination rights to those specified in paragraph 5(d) of the 1965 agreement. Having so decided, it is unnecessary for us to resolve the question of whether paragraph 12(b) is applicable.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and STAMOS, J., concur.